COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia

WILLIAMS INDUSTRIES, INC. AND
 PACIFIC EMPLOYERS INSURANCE COMPANY
                                            OPINION BY
v.    Record No. 0861-96-2          JUDGE MARVIN F. COLE
                                        FEBRUARY 11, 1997
TERRY LYNN WAGONER

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Arthur T. Aylward (Midkiff & Hiner, P.C., on
            briefs), for appellants.

            B. Mayes Marks, Jr. (B. Mayes Marks, Jr.,
            P.C., on brief), for appellee.


        Williams Industries, Inc. and Pacific Employers Insurance

Company (collectively "employer") appeal the decision of the

Workers' Compensation Commission ("commission") awarding

temporary total disability benefits to Terry Lynn Wagoner

("claimant").  Employer argues that the commission erred (1) in

determining that claimant's work-related spinal injuries

aggravated his idiopathic hip disease; (2) in applying the

compensable consequences doctrine; and (3) in concluding that

employer was responsible for all expenses related to claimant's

hip disease.  Because the commission did not err, we affirm its

decision.

                        **Background**

        Claimant, who worked as a draftsman for employer, suffered a

back injury on April 11, 1991, in an accident accepted as

compensable by employer.  Claimant's injuries included herniated

discs at L4-5 and L5-S1, as well as degenerative joint disease and spinal stenosis. Claimant underwent various surgical procedures to treat his spinal injuries, which included bone grafts taken from his hips. A laminectomy and discectomy for the herniation at L4-5 was performed by Dr. Hallett H. Mathews, treating physician and orthopaedic surgeon, on May 9, 1991. Dr. Mathews reported that claimant's work-related injury continued. Fusion surgery was performed on April 1, 1993, for the spinal stenosis at L4-5 with intercondylar collapse at L5-S1, and for a lumbar instability syndrome. The employer accepted liability for these conditions and paid related benefits. Claimant last received compensation on October 6, 1993, before he returned to work.

In August 1994, claimant began reporting tenderness and pain in both hips. On August 3, 1994, Dr. Mathews found evidence of avascular necrosis ("AVN") in both of claimant's hips.[1] On October 17, 1994, Dr. Mathews commented that claimant "is having a lot of back aggravation because of his protected gait for both hips. He has [AVN] and we have made this diagnosis bilaterally." On August 5, 1994, orthopaedic surgeon Dr. Douglas E. Jessup

---

[1] Dorland's Illustrated Medical Dictionary, 26th ed. (1985) defines necrosis as "the sum of the morphological changes indicative of cell death and caused by the progressive degradative action of enzymes . . . ." Dorland's further identifies osteonecrosis as "death, or necrosis, of bone," and avascular necrosis as such cell death "due to deficient blood supply."

Medical evidence in this case states that "AVN is due to a disruption of the blood flow within the femoral heads."

agreed that claimant had "idiopathic osteonecrosis [of] both femoral heads." Orthopaedic surgeon Dr. William A. Jiranek examined claimant on October 21, 1994, also diagnosed bilateral osteonecrosis, and recommended surgery, which was performed on December 14, 1994.

On December 21, 1994, Dr. Rebecca M. Bigoney opined that claimant's AVN "clearly appears to be related to the previous back injury." On February 13, 1995, Dr. Mathews noted complaints of back and left leg symptoms and reported that claimant "has had bilateral hip, [AVN] and coring by Dr. Jiranek and certainly his hips have been made worse by the lumbar spine surgery and the protection that he has had to do for his back and also the stairs and steps which have been part of his job requirements." On March 8 and March 15, 1995, Dr. Mathews again commented on the interrelationship between claimant's back and hip pain, stating that claimant's ongoing back condition "has certainly caused wear and tear in his hips which has propagated an ongoing condition of [AVN]. They are now feeding off of each other with symptomatology."

On March 13, 1995, claimant filed a change in condition application, requesting temporary total disability benefits for the period from December 14, 1994 to January 3, 1995, payment of all bills related to the hip surgery, and permanent partial disability benefits. The deputy commissioner found that while not actually causing claimant's AVN, treatment for claimant's

work-related spinal injuries <u>aggravated</u> the AVN. The deputy commissioner awarded claimant temporary total disability benefits and surgery costs.

The full commission affirmed the deputy commissioner's opinion, finding that the record proved that claimant's AVN was both aggravated by and aggravated claimant's back injuries. The commission found employer liable for claimant's AVN condition, even if the condition was idiopathic in etiology.

## Analysis

On appeal, we review the evidence in the light most favorable to the party prevailing below. <u>R.G. Moore Bldg. Corp. v. Mullins</u>, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court. Code § 65.2-706; <u>Manassas Ice & Fuel Co. v. Farrar</u>, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991).

The commission found, and claimant concedes, that no evidence proved that his original back injury <u>caused</u> the AVN in his hips. Claimant argues, however, that his AVN <u>preexisted</u> his back injury and was aggravated by the back injury. Employer argues that claimant's AVN arose <u>after</u> claimant's back injury and became debilitating independent of the back injury.

The doctrine of compensable consequences is well established and has been in existence for many years. We have stated the basic principle:

> When the primary injury is shown to have

4

arisen out of and in the course of
employment, every natural consequence that
flows from the injury likewise arises out of
the employment, unless it is the result of an
independent intervening cause attributable to
claimant's own intentional conduct.

Morris v. Badger Powhatan/Figgie, Int'l., Inc., 3 Va. App. 276,

283, 348 S.E.2d 876, 879 (1986) (quoting A. Larson, The Law of

Workmen's Compensation, §§ 13 and 81.30).

> Larson further explains that:
> A distinction must be observed between
> causation rules affecting the primary injury
> . . . and causation rules that determine how
> far the range of compensable consequences is
> carried, once the primary injury is causally
> connected with the employment.  As to the
> primary injury, it has been shown that the
> "arising" test is a unique one quite
> unrelated to common law concepts of legal
> cause, and . . .  the employee's own
> contributory negligence is ordinarily not an
> intervening cause preventing initial
> compensability.  But, when the question is
> whether compensability should be extended to
> a subsequent injury or aggravation related in
> some way to the primary injury, the rules
> that come into play are essentially based
> upon the concepts of "direct and natural
> results," and the claimant's own conduct as
> an independent intervening cause.

Id. at § 13.11.

In Burlington Mills Corp. v. Hagood, 177 Va. 204, 13 S.E.2d

291 (1941), claimant was working at a machine, about fifteen feet

from an electric motor which was being repaired.  A loose wire in

the motor caused a short circuit, which produced an electric

flash and a sound resembling that of a shotgun.  Claimant saw the

flash and fell backwards when she was rescued by a co-employee.

5

First aid was administered and she was sent home.  She testified that she was in good health prior to this incident.  She returned to work the following day.  While at work about a month later, claimant looked up and suddenly saw the employee who had caught her when she fell.  She fainted and fell and at the time of the hearing had not returned to work.  The medical evidence of both parties conclusively established that the cause of the disability was traumatic neurosis.  The commission traced this to the original accident and awarded compensation for the neurosis.  The Supreme Court said:

> The doctors thus, in effect, stated that traumatic neurosis was traceable to the shock or disturbing effect on the nerves of the patient, and that in turn, the irritation of the nerves caused functional disorders, and, that whether the disability resulted from nervous reaction or from auto-suggestion set in motion by memory of the accident, the result was the same to the injured person.

Id. at 209, 13 S.E.2d at 293.

The Supreme Court pointed out in Burlington Mills Corp. that the claimant's disability was occasioned by an injury which "may be fairly traced" to a risk which arose out of and in the course of her employment.  There was a direct causal relation between the electric flash and the irritated condition of her nervous system.  Id. at 210, 13 S.E.2d at 293; see also E.C. Womack, Inc. v. Ellis, 209 Va. 588, 592-93, 166 S.E.2d 265, 268-69 (1969) (holding that psychiatric symptoms resulting in disability from work flowed from injuries received in primary accident and were

6

compensable); Imperial Trash Service v. Dotson, 18 Va. App. 600, 606-07, 445 S.E.2d 716, 720 (1994) (citation omitted) (stating general rule "'When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.'").

Assuming that claimant's AVN preexisted his back injury, the law supports the commission's decision that employer was liable for the costs associated with claimant's AVN.  It is well established that the employer takes the employee as the employer finds the employee, even where the employee suffers some physical infirmity.  Kemp v. Tidewater Kiewit, 7 Va. App. 360, 363, 373 S.E.2d 725, 726 (1988).  "A finding that a pre-existing condition 'was accelerated or aggravated' by an injury sustained in an industrial accident establishes a causal connection between the injury and disability[,] and the 'disability resulting therefrom is compensable under the Workers' Compensation Act.'"  Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993) (quoting Olsten of Richmond v. Leftwich, 230 Va. 317, 320, 336 S.E.2d 893, 895 (1985)).  As we will discuss below, sufficient evidence proved that claimant's back injury accelerated and aggravated his AVN.  Therefore, the commission did not err in ruling that employer was liable if claimant's AVN preexisted his back injury.

Assuming that claimant's AVN did <u>not</u> preexist his back injury, but instead arose <u>after</u> his back injury, the commission also did not err in ruling that employer was nevertheless liable for the costs associated with claimant's AVN. The commission found that the claimant's back injury was aggravated by his AVN because he had to alter his gait pattern and body mechanics to accommodate the AVN pain. Moreover, it found to the extent his back was dysfunctional, the partial loss of use inhibits such accommodation with respect to the AVN, aggravating that condition. Additionally, the commission found that because the AVN had to be treated in order to reduce the effects on the work injury, the employer is responsible for the costs of such treatment. We have reviewed the medical record and we find credible evidence to support the commission's findings. The issue in cases involving the range of compensable consequences flowing from the primary injury is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence. See <u>Leonard v. Arnold</u>, 218 Va. 210, 214, 237 S.E.2d 97, 100 (1977); <u>Bartholow Drywall Co., Inc. v. Hill</u>, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991).

Here, the commission did not err in determining that the evidence proved the requisite "causal connection" between claimant's AVN and his back injury. The most competent medical evidence supporting the commission's conclusion includes the February 13, 1995 note from Dr. Mathews, which reported that

claimant "has had bilateral hip, [AVN] and coring by Dr. Jiranek and certainly <u>his hips have been made worse by the lumbar spine surgery</u> and the protection that he has had to do for his back and also the stairs and steps which have been part of his job requirements." (Emphasis added.) On March 8 and March 15, 1995, Dr. Mathews again commented on the interrelationship between claimant's back and hip pain, stating that claimant's ongoing spine condition "has certainly caused wear and tear in his hips which has propagated an ongoing condition of [AVN]." Lastly, Dr. Bigoney opined that claimant's AVN "clearly appears to be related to the previous back injury."

This evidence supports the commission's finding that claimant's increasingly debilitating AVN was a natural consequence that flowed from and was a direct result of his back injury. Accordingly, claimant met his burden of proving that his AVN was a compensable consequence of his back injury.

Finally, we agree with the commission's determination that employer should pay <u>all</u> costs related to claimant's treatment for his AVN. The commission stated:

> [B]ecause the [AVN] must be treated to reduce the symptomatology and its effects on the direct work injury, such treatment is effectively treatment of the direct work injury, and the employer must be responsible for the costs of such treatment on these grounds also. . . . [I]t is clear that the claimant's [AVN] is both aggravated by and aggravates the claimant's work injury, so the employer is liable for that condition also, even if it was idiopathic in etiology.

9

The commission did not err, therefore, in holding the employer responsible for all the expenses.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>