COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Kelsey and Huff
Argued at Chesapeake, Virginia


RIVERSIDE REGIONAL MEDICAL CENTER
 AND HARTFORD CASUALTY INSURANCE
 COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1038-11-1                 CHIEF JUDGE WALTER S. FELTON, JR.
                                                        DECEMBER 20, 2011
LINDA CALLISON-HAAS


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Adam S. Rafal (Lisa L. Thatch; Vandeventer Black LLP, on brief),
              for appellants.

              No brief or argument for appellee.


       Riverside Regional Medical Center and its insurer, Hartford Casualty Insurance

Company, (collectively, "employer") appeal a decision of the Virginia Workers' Compensation

Commission ("commission") awarding Linda Callison-Haas ("claimant") payment for medical

expenses she incurred after April 1, 2010, and continuing, for her March 2, 2010 work-related

right knee injury.  On appeal, employer challenges the commission's finding that claimant's need

for medical treatment for her right knee after April 1, 2010 was related to her work-related injury

on March 2, 2010.  For the following reasons, we reverse and remand.

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND
### A. Medical History
#### 1. Work-Related Injury

On March 2, 2010, while at work, claimant slipped on a newly waxed floor causing injury to both knees and her back.[1] The following day, on March 3, 2010, claimant selected Dr. Roxanne Dietzler as her authorized treating physician from a list of physicians provided by employer's human resources department. Beginning on March 3, 2010, claimant was treated by Dr. Dietzler weekly until April 1, 2010. Claimant's medical records from each appointment with Dr. Dietzler noted that claimant was not experiencing any "popping, clicking or giving way" in her right knee. Dr. Dietzler performed a McMurray's Test[2] on claimant's right knee at each appointment, and on each occasion that test was reported as negative. On April 1, 2010, Dr. Dietzler released claimant to full work duty with the restriction that she be allowed to sit for 10 minutes every hour during her scheduled work for the following two weeks.

#### 2. First Intervening Incident

On April 6, 2010, claimant sought treatment from Dr. Dietzler. She told Dr. Dietzler that she was playing with her dogs in her yard over the previous weekend when "she stepped to the side and her [right] knee popped." When Dr. Dietzler administered the McMurray's Test on that date, claimant reported she experienced pain. Prior to that incident, claimant "stated that everything was improving" and "that the knee was feeling better and she was back to her usual activities." Dr. Dietzler released claimant to work reinstating her previously imposed work restrictions. Following this appointment, claimant was notified by the workers' compensation

---

[1] At the time of her work-related injury, claimant was employed as a registered nurse in employer's Cardiovascular Telemetry Unit.

[2] The McMurray's Test examines for possible injury to the medial meniscus in the knee joint structure. See Dorland's Illustrated Medical Dictionary 1808 (29th ed. 2000).

carrier that it would not cover her medical bills incurred as a result of treatment to her right knee arising from the non-work-related incident.

3.  Second Intervening Incident

On April 22, 2010, claimant sought treatment from an urgent care center at Langley Air Force Base for sharp pain in her right knee.[3]  The triage report in claimant's medical record from that visit records that claimant "was jumping at her son - - her 'knee popped' & saw stars."  The medical record from that visit also recorded that claimant reported that her right knee "did not give out, no locking up."  A McMurray's Test, administered that day to claimant, was reported as negative.

Thereafter, on April 26, 2010, claimant was examined at the Portsmouth Naval Medical Center's family medicine clinic.  Claimant's medical record from that visit contains the notation that she had a right knee scope in 2001,

> then 3 months ago slipped on waxed floor and had hematoma and then about 4 weeks later twisted knee and popped.  Then 5 days ago, was taking a step to the side and had right knee popping and severe pain. . . .  4 days ago, had xray, [diagnosed] with knee sprain.  Now, today, right knee is sore 4/10.  [W]orse with movement, better with rest/ice.

A McMurray's Test administered that day was reported as negative.  Following her examination, claimant was referred to Dr. Mark Topolski, an orthopedic surgeon at Langley Air Force Base.

Dr. Topolski examined claimant on May 13, 2010, more than two months following claimant's work-related right knee injury and a little over a week after she applied for workers' compensation benefits.  He recorded the following medical history from that visit:

> [Claimant] is a pleasant 51 year old female who works as a nurse.
> Unfortunately, on March 02, she sustained a twisting injury at
> work where she slipped and fell, had immediate pain on the inside

---

[3] Claimant is eligible for treatment at military medical facilities as a result of her prior military service.

> portion and patella portion of her knee. Since that time, she has had recurrent episodes of catching, locking and popping causing pain. The pain is anywhere from 8-10/10 with activity.[4]

(Footnote added). Dr. Topolski performed a McMurray's Test on claimant's right knee on that date and recorded the result as positive. Dr. Topolski diagnosed claimant as having "[l]ikely" suffered a right medial meniscal tear, stating that "I *suspect* that she *may have* sustained this meniscal tear during the fall that occurred in March." (Emphasis added). In response to the question on the attending physician's report: "Is diagnosed condition due to the occurrence described by the patient?," Dr. Topolski checked "yes" followed by the notation: "*suspect*." (Emphasis added). The record on appeal is also silent as to whether Dr. Topolski reviewed Dr. Dietzler's treatment records, the records from claimant's April 22, 2010 visit to the urgent care center at Langley Air Force Base, or the records from claimant's April 26, 2010 visit to the Portsmouth Naval Medical Center's family medicine clinic in formulating his opinion.

## B. Procedural History

On May 4, 2010, claimant applied for workers' compensation benefits, seeking payment of medical expenses related to her work-related injuries and temporary total disability benefits from April 22, 2010 to May 4, 2010, based on an average weekly wage of $925.33. Claimant's application for benefits was denied by employer on August 25, 2010.

In a November 1, 2010 letter to employer's attorney, Dr. Dietzler stated that she had reviewed the treatment she had provided to claimant, as well as claimant's treatment records from Langley Air Force Base. Dr. Dietzler stated that it was her "medical opinion that the pain and symptoms that [claimant] was experiencing on April 6, 2010 [in her right knee] were not related to the initial accident of 03/02/2010." Dr. Dietzler further stated that, in her medical

---

[4] Dr. Topolski's report contains no notations of the incidents with claimant's dogs and son that she previously reported to Dr. Dietzler and the Portsmouth Naval Medical Center's family medical clinic respectively.

opinion based on her initial and ongoing treatment of claimant, claimant "had an intervening trauma unrelated to her industrial accident that caused the new symptoms and physical examination findings [related to her right knee]." Dr. Dietzler agreed with Dr. Topolski's diagnosis that claimant had, at some point, suffered a tear of the medial meniscus in her right knee, opining further that, "knowing the history it is my medical opinion that the [right knee medial meniscus tear] is not a result of the work related incident of March 3, 2010, but is the result of other unrelated incidents that have occurred after she was released on April 1, 2010."

On November 5, 2010, a hearing on the claim was held before a deputy commissioner. The parties stipulated that the March 2, 2010 right knee injury was a compensable injury by accident. However, employer contended that any medical care claimant incurred for her right knee after April 1, 2010 was not related to the March 2, 2010 accident.

In a written opinion dated December 16, 2010, the deputy commissioner concluded that claimant's right knee treatment after April 1, 2010 arose from the March 2, 2010 work-related accident. He found claimant's testimony credible that her right knee pain after April 1, 2010 was the same as her pain after the March 2, 2010 accident. The deputy commissioner concluded, without further explanation, that "Dr. Topolski's opinion is persuasively based on [claimant's] credible history and that his opinion is entitled to greater weight than the contrary opinion of Dr. Dietzler." The deputy commissioner awarded claimant continuing medical benefits for her right knee injury, including those medical costs claimant incurred for treatment of her right knee at Langley Air Force Base and Portsmouth Naval Medical Center after April 1, 2010.

On rehearing before the full commission, employer argued that the deputy commissioner erred in accepting "'the self-serving testimony of the claimant over that of the treating physician regarding an issue of medical causation.'" Employer also asserted that the deputy commissioner erred in accepting Dr. Topolski's medical opinion as to the cause of claimant's right knee medial

meniscus tear. Employer asserted that Dr. Topolski's statement: "I suspect that she may have sustained this meniscal tear during the fall that occurred in March," was "equivocal and speculative." The full commission affirmed the deputy commissioner's opinion, stating that the deputy commissioner

> weighed the evidence in light of the claimant's credible testimony. We defer to his credibility determination and find that the claimant has met her burden of proof. The opinion of Dr. Dietzler was shaded by doubt because she incorrectly believed when she issued her opinion that she had released the claimant when in fact the medical records show that the claimant's right knee was still improving and had not completely healed. The claimant testified that she had not recovered by April 5, 2010. She was under work restrictions. Dr. Topolski's opinion is consistent with the claimant's history of the accident and subsequent problems.

Commissioner Williams dissented arguing "that the case turns not upon the claimant's credibility, but instead upon the medical evidence in the record." Commissioner Williams noted:

> Dr. Dietzler was in the best position to determine the extent to which the claimant sustained a new injury on April 4, 2010. Dr. Dietzler clearly indicated that the April 4, 2010 incident was a new injury and that the claimant's medical treatment after April 1, 2010 was unrelated to the March 2, 2010 injury. Dr. Dietzler's opinions in this regard are based upon her own examination findings and her review of the later medical records. It is clear that following the April 4, 2010 incident the claimant's examination findings changed. These changed findings suggested a meniscus injury, which Dr. Dietzler concedes is a possibility. However, and critical to the decision here, the claimant had no such findings before the April 4, 2010 incident which occurred at her home.

## II. ANALYSIS

On appeal, employer contends the commission erred in finding claimant's right knee injuries subsequent to April 1, 2010 were causally connected to her work-related injury of March 2, 2010. Employer also contends that the commission erred in adopting Dr. Topolski's medical opinion and rejecting that of Dr. Dietzler, claimant's authorized treating physician.

"'The link of causation must *directly connect* the original accidental injury with the additional injury for which compensation is sought.'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 751, 601 S.E.2d 693, 697 (2004) (quoting Amoco Foam Prods. Co. v. Johnson, 257 Va. 29, 33, 510 S.E.2d 443, 445 (1999) (emphasis added)). "In other words, the issue is 'essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence.'" Id. (quoting Williams Indus. v. Wagoner, 24 Va. App. 181, 188, 480 S.E.2d 788, 791 (1997)).

> "The issue in all of these cases is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. By the same token, denials of compensation in this category have invariably been the result of a conclusion that the requisite medical causal connection did not exist."

Id. (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.02, at 10-5 (2003)).

From the record before us on appeal, we conclude that the commission erred in relying on Dr. Topolski's tentatively stated medical opinion, based on a history inconsistent with that contained in claimant's other treatment records, that claimant's right knee medial meniscus tear was incurred when she suffered her work-related injury on March 2, 2010, and erred in disregarding the medical opinion of Dr. Dietzler, claimant's authorized treating physician.

Dr. Topolski couched his medical opinion regarding the onset of claimant's right knee medial meniscus tear as follows: "I *suspect* that she *may have* sustained this meniscal tear during the fall that occurred in March." (Emphasis added). "'A medical opinion based on a 'possibility' is irrelevant, purely speculative and hence, inadmissible.'" Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 28, 622 S.E.2d 233, 240 (2005) (quoting Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980)). Moreover, when a physician's "original assumption rest[s] upon a faulty premise, . . . the Commission erred in attributing any

- 7 -

weight to it." <u>Clinchfield Coal Co. v. Bowman</u>, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985). His diagnosis was admittedly based, at least in part, on the inconsistent medical history provided by claimant. Dr. Topolski's medical report states that claimant told him that she had experienced popping and clicking in her knee from the time of her work-related injury on March 2, 2010, a history inconsistent with the ongoing history she provided Dr. Dietzler during the course of treatment beginning the day after the accident, and continuing through April after the weekend incident playing with her dogs. The history given to Dr. Topolski by claimant was also inconsistent with the history she gave to her treating physicians at her April 22, 2010 visit to the urgent care center at Langley Air Force Base and her April 26, 2010 visit to the Portsmouth Naval Medical Center's family medicine clinic.

Dr. Dietzler's treatment records for claimant do not reflect that claimant complained that she experienced popping or clicking in her right knee following her work-related injury on March 2, 2010. Dr. Dietzler based her definitive medical opinion on her ongoing treatment and testing of claimant during the relevant period. She opined that claimant's right knee medial meniscus tear did not occur until after April 1, 2010, the date she was released to return to work, and did not result from claimant's March 2, 2010 injury. Dr. Dietzler noted that each of claimant's McMurray's Tests (administered five times between March 3, 2010 and April 1, 2010) were negative. It was not until May 13, 2010 that Dr. Topolski reported that claimant's McMurray's Test was positive, a date well after claimant's non-work-related injuries. The record is silent as to whether Dr. Topolski ever discussed claimant's treatment with Dr. Dietzler, or reviewed Dr. Dietzler's treatment records, including the series of negative McMurray's Tests on claimant's right knee during the course of her treatment. Accordingly, we conclude that the commission's reliance on Dr. Topolski's tentative medical opinion that he "suspected" claimant's right knee medial meniscus tear requiring medical treatment after April 1, 2010 "may

have" been causally related to her March 2, 2010 injury is not supported by the medical history in the record.

## III.  CONCLUSION

For the foregoing reasons, we reverse the decision of the commission and remand for further proceedings consistent with this opinion.

Reversed and remanded.
