COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judge Humphreys and Senior Judge Annunziata
Argued by videoconference


AQUA LEISURE POOLS, SPAS & PATIOS, INC.,
  CAROLINA MUTUAL INSURANCE, INC.
  AND INSURITY, INC.
                                                      MEMORANDUM OPINION* BY
v.        Record No. 0620-20-2                        JUDGE ROBERT J. HUMPHREYS
                                                      NOVEMBER 4, 2020
JOSEPH GREENE, III


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Steven H. Thiesen (Midkiff, Muncie & Ross, P.C., on brief), for
              appellant.

              Philip J. Geib (Philip J. Geib, P.C., on brief), for appellee.


        On April 1, 2020, the Workers' Compensation Commission ("the Commission"), found

that Joseph Greene, III's ("Greene") avascular necrosis and post-surgical methicillin-resistant

staphylococcus aureus ("MRSA") infection resulted from a work-related left hip injury he

sustained after being attacked by a customer's dog while working for Aqua Leisure Pools, Spas

& Patios, Inc.  On appeal, Greene's employer, along with its insurance carrier and claim

administrator (collectively "Aqua Leisure"), assign error to the Commission's determination that

Greene's avascular necrosis and MRSA were causally related to the work-related injury.

                                    I.  BACKGROUND

        On August 28, 2017, Greene was working for Aqua Leisure as a pool liner installer.  As

he entered a customer's yard, the customer's dog ran towards him.  To get away from the dog,

Greene stepped onto a small brick wall that was about one-and-a-half or two feet off the ground.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The dog jumped up and bit Greene's Achilles tendon, causing him to fall off the wall onto a "hard dirt area." Greene landed on his left hip, around where his jean pockets were, and his "left side took all the impact." Greene sustained two additional bites to his left wrist and left thigh before he was able to get away. At the time of the dog attack, Greene was thirty-seven years old. In the days following, Greene only experienced pain related to the bite wounds. He did not notice any bruising or cuts on his left hip. The bite wound on his ankle eventually developed MRSA.

On September 26, 2017, Greene gave a recorded statement to the workers' compensation insurance carrier explaining the dog attack. In the statement, Greene did not mention falling off the brick wall. When asked "exactly what parts of [his] body were injured," Greene responded that his left heel, left thigh, and left wrist were injured. The carrier's representative then asked if those injuries "were all just from bites or did you get injured when you fell or anything like that?" Greene responded that the injuries were all from bites.

However, sometime in mid-October 2017, approximately two months after the dog attack, Greene developed pain in his groin. Initially, he thought the pain was a pulled muscle or hernia. On October 23, 2017, Greene saw his primary care physician for the pain. During the visit, he described the pain as "some discomfort in the left medial thigh where he was bit," that was "[o]ccasionally sensitive to touch" and caused "[a]n uncomfortable sharp pain if he step[ped] awkwardly." Greene's doctor referred him to several other doctors to treat his groin pain. Throughout this period, the pain was "progressively getting worse and worse."

On November 2, 2017, the Commission entered an award order providing for temporary total disability and medical benefits for the dog bites to Greene's left wrist and ankle. On March 5, 2018, the Commission entered a stipulated order, adding the injury from the bite on Greene's left thigh to the medical award.

On July 5, 2018, Greene saw Dr. Peter Jacobson ("Dr. Jacobson"), who diagnosed Greene with avascular necrosis in his left hip after reviewing Greene's MRI and CT scans. Specifically, Dr. Jacobson found that Greene had "avascular necrosis [of the] left femoral head with a small nondepressed—which means nondisplaced—insufficiency fracture of the subchondral bone, which is the bone right under the cartilage . . . ." Avascular necrosis is the death of a bone due to an interruption in blood supply to the bone. As the blood supply comes back, the bone softens, causing "a lot of pain."

There are a number of risk factors associated with avascular necrosis, including a fracture, dislocation, or other trauma to the hip. Usually, young people will only develop avascular necrosis after a hip dislocation. Because Greene had no other risk factors, no history of injuries to his hip, and gradually developed pain, Dr. Jacobson determined that the most likely cause of Greene's avascular necrosis was the "hard impact injury" Greene sustained after falling off the brick wall.

Due to the extent of Greene's avascular necrosis, a hip replacement "was [the] only real solution." On September 10, 2018, Dr. Jacobson performed Greene's hip replacement surgery. A couple weeks after his surgery, Greene's incision site from the surgery developed MRSA with the same antibiotic profile as the MRSA he developed from the dog bite to his ankle. On October 2, 2018, Dr. Jacobson performed a second surgery to treat Greene's post-surgical MRSA infection.

On May 7, 2019, Greene sought to amend his claim for disability to include the injury to his left hip as a compensable injury as a result of his work-related accident. At the evidentiary hearing, Greene testified that he did not realize how "in depth" he had to describe the incident to the insurance carrier. When questioned about telling the carrier's representative that his injuries were just from bites, Greene explained, "I mean at the time I did not know I was . . . hurt."

Dr. Jacobson testified Greene's delayed onset of pain was consistent with what he would expect based on Greene's case of avascular necrosis. A crack in the hip may take "four months, six months, [or] a year to show up." Typically, with a subtle, stable fracture like Greene had, the patient does not "get symptoms until they're starting to heal and it's getting loose."

Although about half of avascular necrosis diagnoses are "idiopathic," meaning with no known cause, Dr. Jacobson determined that Greene's avascular necrosis was "far more likely than not . . . related to [the fall from the dog attack] because he didn't have any other reasons for this to have happened to him." Moreover, Dr. Jacobson opined that but for the bite wound, Greene would not have developed the same strain of MRSA pathogen because "he wouldn't have had MRSA." Although Dr. Jacobson testified that Greene "could have been a MRSA carrier when the dog bit him," he determined that the dog bite was what introduced the pathogen to Greene's system because "the dog bite carried the MRSA through his skin and into his muscle, and then he got an infection because it was normally on his skin."

Aqua Leisure proffered its own expert medical opinion from Dr. Daniel R. Cavazos ("Dr. Cavazos"), who did not treat Greene but conducted a review of his medical records. Dr. Cavazos opined that, based on the medical records, Greene's avascular necrosis was more likely idiopathic than caused by the fall on his hip, because the "fall onto the left greater trochanter described by Dr. Jacobson would have been a low energy injury which would not have been sufficient to have resulted in the development of avascular necrosis of the left femoral head."

On April 1, 2020, the Commission held that Greene's left hip injury was causally related to the work-related accident, that he developed causally related avascular necrosis in his left hip, and that surgical treatment of the avascular necrosis caused a MRSA infection. Specifically, the Commission found that Greene's omission of falling off the brick wall in his recorded statement

was not fatal to his claim because "his answers were not evasive" and he "failed to realize the amount of detail he should have provided." The Commission also determined that Greene's failure to include his left hip injury in the award order and stipulated order did not bar his claim because "[h]e did not know his fall caused a left hip injury until his July 5, 2018 consultation with Dr. Jacobson, which was after he signed the October 20, 2017 Award Agreement and the March 5, 2018 Stipulated Order."

Finally, the Commission credited Dr. Jacobson's testimony as Greene's treating physician. Although the Commission considered Dr. Cavazos's opinion, it "decline[d] to afford it controlling weight" because "Dr. Cavazos did not personally examine [Greene], as opposed to Dr. Jacobson, who treated [Greene] for an extended period of time and performed two surgeries." This appeal follows.

## II. ANALYSIS

### A. Standard of Review

The Commission's findings of fact will not be disturbed on appeal if supported by credible evidence "such that a reasonable mind could conclude that the fact in issue was proved." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005)). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504 (1986) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). However, "[s]uch deference to the Commission does not extend to questions of law, which we review *de novo*." Anderson, 65 Va. App. at 361 (citing Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127 (1999) (*en banc*)). We construe the evidence in the light most favorable to the prevailing party below. Id.

## B.  Avascular Necrosis

The doctrine of compensable consequences allows an employee to recover for work-related injuries, even if those injuries do not manifest during the initial work-related "accident, but rather, develop at some point in the future."  Id. at 363 (citing Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 751 (2004)).  Once the employee establishes that the primary injury arose "out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to the [employee's] own intentional conduct."  Id. (quoting Haftsavar v. All Am. Carpet & Rugs, 59 Va. App. 593, 599-600 (2012)).  Thus, when the doctrine of compensable consequences applies, "the second injury is treated as if it occurred in the course of and arising out of the employee's employment."  Id. (quoting Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 23 (2005)).

Aqua Leisure argues that Greene's testimony was inherently incredible because of the several statements and stipulations he made prior to finding out the link between his work-related injury and hip pain.  The causation, nature, and extent of a work-related injury is a question of fact that "may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'"  United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238-39 (2011) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176 (1996)).  The Commission, as the factfinder, is responsible for resolving questions of controverted facts, including questions of witness credibility.  Id. at 239 (citing Metro. Wash. Airports Auth. v. Lusby, 41 Va. App. 300, 312 (2003)).  Accordingly, the Commission's determinations regarding the causation of an injury and witness credibility "are conclusive and binding upon this Court if supported by credible evidence."  Id. (citing Code § 65.2-706(A)).

- 6 -

Here, the Commission credited Greene's testimony because he did not know his fall caused the injury until his consultation with Dr. Jacobson, which was several months after he signed the award agreement and stipulated order. Greene's delayed symptoms are consistent with the diagnosed injury. Dr. Jacobson testified that a crack in the hip may take "four months, six months, [or] a year to show up." Thus, he would expect a delayed timeline of symptoms when the patient has a subtle, stable fracture because the patient does not develop any "symptoms until they're starting to heal and it's getting loose."

Although the Commission "acknowledge[d] that [Greene] did not describe falling off of the brick wall in his recorded statement," it determined that, "considering the evidence, as a whole," such omission was not fatal to Greene's claim. The Commission concluded that when asked about his failure to mention falling off the brick wall in his recorded statement, Greene's "answers were not evasive," and he failed to mention it because "he did not realize the amount of detail he should have provided." The Commission, after viewing the entirety of the direct and circumstantial evidence, resolved the potential inconsistencies in the record by determining that, although the fall caused Greene's left hip injury, his injury did not manifest until sometime after the accident. Because that factual finding is supported by credible evidence in the record, it is conclusive and binding on this Court. Accordingly, the Commission did not err in determining that Greene injured his left hip in the August 28, 2017 accident.

Aqua Leisure further argues that the Commission erred in according any weight to Dr. Jacobson's opinion because it was "based on a flawed and inaccurate history," and that the Commission should have instead credited the testimony of its own expert, Dr. Cavazos. However, "[t]he opinion of the treating physician is entitled to great weight." Hayes, 58 Va. App. at 238 (citing Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439 (1986)). If the treating physician's opinion conflicts with other medical evidence, "the Commission is to decide

the 'probative weight' to be given to [the] conflicting medical evidence." Commonwealth v. Bakke, 46 Va. App. 508, 518 (2005) (quoting C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1071 (1978)). We grant great deference to the Commission's factual findings with respect to medical questions, based on the "unwisdom of an attempt" by the courts to choose between conflicting expert medical opinions. Id. at 519 (quoting Stancill v. Ford Motor Co., 15 Va. App. 54, 58 (1992)).

Here, the Commission credited Dr. Jacobson's testimony, as Greene's treating physician. Specifically, the Commission found,

> Dr. Jacobson explained the risk factors that can cause avascular necrosis in younger people, such as chronic alcohol abuse or heavy steroid use. There being no evidence that [Greene] is subject to these risks, Dr. Jacobson concluded that it was more likely than not that [Greene's] left hip injury and necrosis was caused by his fall off the brick wall.

The Commission considered Dr. Cavazos's competing opinion after his "records review," but "decline[d] to afford it controlling weight" because "Dr. Cavazos did not personally examine [Greene], as opposed to Dr. Jacobson, who treated [Greene] for an extended period of time and performed two surgeries." The Commission was entitled to give great weight to the testimony of Greene's treating physician. Its decision to adopt Dr. Jacobson's opinion, as the treating physician, and reject Aqua Leisure's competing medical testimony, is a factual determination not reviewable by this Court.

### C. MRSA Infection

The compensable consequences doctrine also permits recovery for "all the medical consequences and *sequelae* that flow from the primary injury," so long as a direct, causal link connects the primary compensable injury with the additional injury for which the claimant seeks compensation. Landrum, 43 Va. App. at 750-51 (citing 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.01, at 10-3 (2003)). "In other words, the issue is

'essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence.'" Id. at 751 (quoting Williams Indus. v. Wagoner, 24 Va. App. 181, 188 (1997)). "A medical opinion finding causation *in part*, if established with the requisite certitude, can be relied upon by the factfinder as persuasive." Id. at 752. "The extent or degree to which the work-related cause contributed is not important. It matters only that the work-related cause contributed in some part to claimant's disability." Id. at 753 (quoting Henrico Cnty. Sch. Bd. v. Etter, 36 Va. App. 437, 446 (2001)).

Here, the record establishes that the MRSA infection Greene developed after the surgery was either a compensable consequence of the dog bite, or a compensable consequence of the surgery, which was a treatment for the injury caused by the fall. Dr. Jacobson found that Greene first contracted MRSA after being bitten by the dog, causing him to become a permanent carrier of the disease. Dr. Jacobson also determined that the same bacteria caused both of Greene's MRSA infections because, in his opinion, the antibiotic profile of the cultures taken after the dog bite and after the surgery were "identical." But for the original bite wound, Dr. Jacobson opined that Greene would not have developed this same strain of pathogen because "he wouldn't have had MRSA."

Dr. Jacobson's testimony established, with a reasonable degree of certainty, that the MRSA infection was causally connected to the compensable injury, either as a compensable consequence of the bite, or as a compensable consequence of the treatment for his avascular necrosis. Accordingly, the Commission did not err in determining that the post-surgical MRSA infection was a consequence of the dog bite, and the judgment of the Commission is affirmed.

Affirmed.