COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference


MASONITE CORPORATION AND
 TRAVELERS INDEMNITY COMPANY
 OF AMERICA

                                                          MEMORANDUM OPINION[*] BY
v.      Record No. 0516-20-2                     CHIEF JUDGE MARLA GRAFF DECKER
                                                              NOVEMBER 10, 2020
REBECCA DEAN


               FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           Brian J. McNamara (Ford Richardson, P.C., on briefs), for
           appellants.

           Bradford M. Young (HammondTownsend, PLC, on brief), for
           appellee.


     Masonite Corporation and Travelers Indemnity Company of America (collectively the

employer) appeal a decision of the Workers' Compensation Commission (the Commission)

awarding benefits to Rebecca Dean (the claimant) for back and neck injuries.  The employer

raises four assignments of error but concedes that all hinge on the resolution of its assertion that

the Commission erred by ruling that the claimant's back and neck injuries were compensable

consequences of her original occupational accident.  We hold that credible evidence supports the

Commission's finding that the back and neck injuries were compensable consequences.

Consistent with this ruling, we also hold that the employer's remaining three assignments of

error are moot.  Consequently, we affirm the award of benefits.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

It is undisputed that the claimant experienced a compensable injury by accident to her left shoulder, arm, and wrist while working for the employer on December 21, 2017. The accident occurred when a piece of equipment hit the claimant's ankle and knocked her to the floor. The claimant landed on her left hand with her wrist bent behind her, and the impact "jammed" her shoulder "into [her] head."

The employer accepted the injuries to the claimant's left upper extremity as compensable, and the parties filed an award agreement with the Commission. On July 9, 2018, the Commission entered an award order based on that agreement, which covered the claimant's December 2017 injuries to her left shoulder, arm, and wrist.

By letter of August 31, 2018, the claimant filed a supplemental claim seeking coverage of injuries to her back and neck in addition to the injuries identified in the existing award. She subsequently "clarifi[ed]" that she did not injure her back and neck in the 2017 accident and sought to add these injuries "under the theory of compensable consequence."

In a pre-hearing deposition, the claimant testified that she felt pain mostly in her ankle immediately after the accident. She also experienced pain in her left shoulder and neck and had a headache. When the claimant returned to work, which required her to exert herself with her arms, she noticed significantly more soreness in her shoulder, arm, and wrist. According to the claimant, her back began to hurt in February or April 2018 while she was performing a specific exercise in home physical therapy. During and after that time, the claimant received treatment for pain in her left shoulder, arm, and wrist, as well as for pain in her back and neck.

---

[1] On appeal, this Court views the evidence "in the light most favorable to the prevailing party before the [C]omission," in this case, the claimant. Merck & Co. v. Vincent, 71 Va. App. 439, 442 (2020) (quoting King v. DTH Contract Servs. Inc., 69 Va. App. 703, 708 (2019) (alteration in original)).

On June 18, 2019, the employer filed a copy of the claimant's deposition transcript with the Commission. The next day, the parties appeared for a hearing before a deputy commissioner regarding the claimant's entitlement to coverage for her back and neck injuries as compensable consequences of the 2017 accident. At the hearing, the claimant sought to withdraw her specific characterization of the injuries as compensable consequences. She instead asked the deputy commissioner to decide whether the injuries were compensable under alternative theories—as either original injuries *or* compensable consequences.

The claimant testified that she believed that she first developed back pain in February 2018 while doing home exercises provided by her physical therapist. She described the pain as "all based on the right side," running across her shoulders and neck and then down her spine into the lower part of her back. She further indicated that the pain in her neck at that time severely limited her range of motion. The claimant admitted that both her back and neck hurt immediately after the accident, but she explained that she thought that she had merely "pulled" the muscles or that her back and neck were "just sore." She testified that the pain in her neck worsened because of the activity required by her job. She explained that when she began her at-home physical therapy exercises, her lower back "started hurting really bad" and "going out on [her]." She said her neck pain intensified during this same period.

The medical evidence shows that the claimant had nine physical therapy sessions for her left upper extremity injuries in January and February 2018 and an additional fourteen before her discharge from physical therapy in June 2018. From February to August 2018, the claimant saw Dr. Christopher Dipasquale, an orthopedist, and Dr. Mark Coggins, a spine specialist, for her left upper extremity, back, and neck problems. The claimant told both doctors that she was experiencing fairly significant "pain in [the] left shoulder radiating to [the] left lateral neck" as

well as from her neck into her thoracic spine. She also reported that her back pain had started around February 2018 when she participated in physical therapy for the work-related injuries.

Both physicians diagnosed the claimant as having a thoracic back sprain or strain. Following further examination and an MRI, Dr. Coggins described her condition as a thoracic myofascial strain and indicated that it "appear[ed] to be a soft tissue injury only." He also noted that he "d[id] not see an obvious source of pain coming from the neck based upon her history and examination." Finally, Dr. Coggins noted no "significant" areas in the midback that would require surgical intervention. He listed trigger point injections and a six-week course of chiropractic care as possible treatment options and provided referrals for those treatments. Coggins released the claimant to return to him as needed. In response to a subsequent questionnaire, Dr. Coggins opined that the claimant's thoracic myofascial strain was causally related to her 2017 industrial accident. He also confirmed that the recommended trigger point injections and chiropractic care were reasonable, necessary, and causally related to that accident.

Following the June 2019 hearing at which the above testimony and medical evidence was admitted, the deputy commissioner issued an opinion concluding that the claimant's back and neck injuries were compensable consequences of her December 2017 industrial accident. He found that the claimant began to experience back and neck pain in February 2018 "while performing exercises for her physical therapy." The deputy commissioner noted the claimant's report that, after this incident, her "back started 'going out' and she developed pain across her shoulders, into her neck[,] and down her spine and into her low back." He also pointed to her acknowledgment that although she had back and neck pain in the immediate aftermath of the fall, she believed that she was "just sore at the time" and that her pain worsened after physical therapy more than a month later. The deputy commissioner recognized that Dr. Coggins opined in July 2018 that the claimant had suffered an injury to her middle back and diagnosed a thoracic

myofascial strain. Finally, he noted Dr. Coggins' recommendation of various treatments as "reasonable, necessary[,] and related to the claimant's industrial accident."

The employer filed a request for review by the Commission, challenging the award on multiple grounds. The Commission unanimously affirmed the decision.

## II. ANALYSIS

On appeal to this Court, the employer raises four interrelated assignments of error but concedes that all hinge on the resolution of its assertion that the Commission erred by concluding that the claimant's back and neck injuries were compensable consequences of her original occupational accident. Consequently, we consider this assignment of error first, before turning to the employer's related claims regarding *res judicata*, notice of the claimant's theory of the case, and the compensability of two challenged medical treatments.

### A. Sufficiency of the Evidence to Prove Compensable Consequences

The employer contends that the claimant injured her back and neck at the time of her original industrial accident in December 2017. It thus argues that her back and neck injuries did not qualify as later compensable consequences of that accident. The employer reasons as a result that the claimant was required to include those injuries in the award agreement that she entered into with the employer covering the original accident and that because she failed to do so, *res judicata* principles now bar her from receiving workers' compensation benefits for those injuries.

The Virginia Workers' Compensation Act provides coverage for injuries by accident that arise out of and in the course of the employment. See Code § 65.2-101; Vital Link, Inc. v. Hope, 69 Va. App. 43, 54 (2018). "Derivative injuries that follow and flow from the original workplace accident may also be compensable." Vital Link, 69 Va. App. at 54. Once "the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the

- 5 -

result of an independent intervening cause attributable to [the] claimant's own intentional conduct." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 283 (1986) (quoting Arthur Larson, The Law of Workmen's Compensation § 13 (1985))), quoted with approval in Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 599 (2012).

This legal theory of "[d]erivative" compensability is called the doctrine of compensable consequences. Vital Link, 69 Va. App. at 54-55. The doctrine covers not only "'aggravation of the primary injury by medical . . . treatment'" but also "subsequent injury to a different body part [if] . . . sufficient[ly] causal[ly] connect[ed] to the first injury." Id. at 55 (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.09 (2018)); see Merck & Co. v. Vincent, 71 Va. App. 439, 447 (2020). This Court, for example, has affirmed an award of benefits to a claimant who sustained a compensable injury to his back and was then diagnosed with a causally related degenerative hip condition. Williams Indus. v. Wagoner, 24 Va. App. 181, 183-84, 187-89 (1997). The Court held that the hip condition was compensable as either an aggravation of a pre-existing condition or "a natural consequence . . . of his back injury" and related treatment. Id. at 187-89. Similarly, this Court affirmed a decision providing coverage where a claimant experienced sexual dysfunction that was caused, at least in part, by treatment for a compensable back injury. See Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 753 (2004).

The question for consideration in determining whether an injury or ailment is a compensable consequence "is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications." Vital Link, 69 Va. App. at 55 (quoting Berglund, 43 Va. App. at 751); see Williams Indus., 24 Va. App. at 188. A determination of medical causation is a factual finding. Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 408 (2004). Causation "may be proved by either direct or circumstantial

evidence, including medical evidence or 'the testimony of a claimant.'" Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26 (2005) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176 (1996)). Additionally, in evaluating whether the evidence establishes causation, "the opinion of the treating physician is entitled to great weight." Berglund, 43 Va. App. at 753 n.4 (quoting H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 655 (2002)).

The standard of review in this Court is well settled. On appeal of a decision of the Commission, this Court views "the evidence and all reasonable inferences that may be drawn from that evidence . . . in the light most favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (en banc)). "In determining whether credible evidence . . . support[s] the [C]ommission's findings of fact, 'the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'" Farmington, 47 Va. App. at 26-27 (first alteration in original) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894 (1991)); see Amelia Sand, 43 Va. App. at 408. Consequently, unless the appellate court "can say as a matter of law that [the] claimant failed to sustain her burden of proving causation, the [C]ommission's findings are binding and conclusive." Farmington, 47 Va. App. at 27.

Here, the evidence, viewed under the proper standard, supports the Commission's finding that the pain that the claimant experienced in her back and neck immediately following the accident was merely discomfort from "sore muscles" and the pain that she experienced later, while performing her physical therapy exercises, was qualitatively different. She described the onset of the pain she experienced during her exercises as running across her shoulders and neck, on the right side, and then down her spine into the lower part of her back. She said that the pain was "really bad in the lower part" and her back "started going out on [her]" after that. Not until

- 7 -

she experienced these more extreme sensations in discrete parts of her back and neck did she seek medical treatment specifically for those body parts. Cf. Hoffman v. Carter, 50 Va. App. 199, 212-13 (2007) (defining a compensable injury by accident under the Act as requiring proof, among other things, of "an obvious sudden mechanical or structural change in the body" (quoting Morris v. Morris, 238 Va. 578, 589 (1989))). This evidence supports the Commission's finding that the back and neck injuries for which the claimant sought compensation occurred in 2018 and qualified as compensable consequences of her 2017 industrial accident, not as original injuries.[2]

The employer argues that the claimant's own testimony establishes that she sustained the back and neck injuries in the original accident because she "expressly stated" that her back and neck "began to hurt on the day of the [2017 accident]" and "the only thing that changed from the date of the [accident] forward was the degree of the pain." Consequently, the employer suggests that the claim is barred by the principles set out in Massie v. Firmstone, 134 Va. 450 (1922), which it characterizes as providing that a "party can rise no higher than h[er own] testimony."

Although the employer accurately restates the general holding of Massie, that holding has been refined and applied in numerous cases in a way that leads to the conclusion that the Commission did not err in this case. See, e.g., Olsten of Richmond v. Leftwich, 230 Va. 317, 320 (1985). Those refinements require consideration of a litigant's testimony "in its entirety and in context with all the other evidence before the Commission." Id. at 321. Additionally, Massie applies only to statements of fact and the natural inferences from those facts, not to

---

[2] The employer limits its argument to the assertion that the claimant injured the body parts at issue in the original December 2017 accident and, thus, that they were not compensable consequences. It does not contest that the claimant in fact sustained an injury by accident to both body parts. See generally Alexandria City Pub. Schs. v. Handel, __ Va. ___, ___ (Oct. 15, 2020) (analyzing the requirements for proving an injury by accident). Therefore, we analyze the compensability of these injuries in the same, largely unitary fashion.

"expression[s] of opinion." Corp. Res. Mgmt., Inc. v. Southers, 51 Va. App. 118, 129 n.6 (2008) (*en banc*) (alteration in original) (quoting Ford Motor Co. v. Bartholomew, 224 Va. 421, 431 (1982)); see Massie, 134 Va. at 462. Further, "[t]he Massie doctrine 'is intended to compel the exercise of good faith on the part of a litigant[,] not to penalize [that litigant] for honest mistakes or infirmities of memory.'" Olsten, 230 Va. at 321 (quoting Burruss v. Suddith, 187 Va. 473, 482 (1948)). Accordingly, "[i]f the testimony of a litigant[, viewed] 'in its entirety[,] does not unequivocally show that [her] case is without merit[,] or if reasonable [jurists] may differ as to its effect, "the [fact finder] must be permitted to pass upon the testimony and the effect thereof, [along] with all the other evidence in the case."'" Id. at 320 (quoting Saunders v. Bulluck, 208 Va. 551, 553 (1968)). Compare Norfolk S. Ry. Co. v. Rogers, 270 Va. 468, 486 n.12 (2005) (citing Massie in holding a claimant to his testimony that he "never" wore a respirator, which conflicted with the testimony of a witness that the claimant wore one "at times"), with Charlton v. Craddock-Terry Shoe Corp., 235 Va. 485, 489 (1988) (holding that the claimant was not bound by her statements regarding the reason for her discharge because her testimony was "ambivalent" and "[h]er employer's . . . motivation [for firing her] was a matter necessarily outside . . . her knowledge").

In this case, the record supports the Commission's finding that any discrepancies in the claimant's testimony did not result from bad faith and merely reflected her effort, as a layperson without medical training, to describe what she experienced during and after the 2017 accident

- 9 -

and 2018 physical therapy exercises for her original injuries.[3]  The Commission, on the record before it, was not compelled to find that she injured her back and neck in the original accident simply because the claimant had sore muscles in those areas in the immediate aftermath of her fall.  See Va. Elec. & Power Co. v. Mabin, 203 Va. 490, 494 (1962) (interpreting Massie to hold that a "damaging statement made in one part of [a litigant's] testimony must be considered in the light of an explanation of such statement made in a[nother] part" and that the fact finder generally "determine[s] whether it will accept such explanation" in light of  "all the other evidence").

We hold that the record supports the Commission's conclusion that the claimant injured her back and neck in home physical therapy in 2018 and was entitled to an award of benefits for those injuries as compensable consequences.

### B.  *Res Judicata* Bar, Notice, & Causally Related Medical Treatment

The employer asserts that the Commission erred in three additional, interrelated ways. First, it argues that the Commission erred by not applying *res judicata* to bar the claimant's request for benefits for her back and neck injuries.  Second, the employer contends that the Commission violated its due process right to notice by allowing the claimant to change her theory of the case at the hearing before the deputy commissioner.  Third, it suggests that the Commission erroneously concluded that the claimant was entitled to chiropractic care and trigger point injections.

---

[3] When the employer asked the claimant why she did not mention in her deposition that her back was sore following the accident, she candidly admitted, "It may have slipped my mind in telling you."  She further related that on the day of the accident, when questioned by the employer about what body parts were hurting, she named "the main ones that w[ere] hurting real bad."  The claimant said she elaborated that she wanted to "leave [the claim] open because [she] still ha[d] some sore parts" and did "not know . . . if [some]thing else . . . would [come] out of it."

- 10 -

Well-recognized principles provide that appellate courts decide cases on the best and narrowest ground. Commonwealth v. White, 293 Va. 411, 419 ((2017), cited with approval in Butcher v. Commonwealth, 298 Va. 392, 396-97 (2020) (plurality opinion) (recognizing that a ruling on factual sufficiency is often the narrowest ground for decision). One application of this doctrine involves a situation in which an appellate court's narrow ruling on one issue renders a broader question moot. See Butcher, 298 Va. at 397 (characterizing the ruling in Commonwealth v. Harley, 256 Va. 216, 217-20 (1998)). Here, although the employer raises these three additional claims, it candidly concedes that if this Court concludes that credible evidence supports the Commission's ruling that the claimant's back and neck injuries were compensable consequences rather than original injuries, these remaining three assignments of error fail on that basis. We agree with the employer's concession and conclude that its remaining three assignments of error are rendered moot by our ruling on the sufficiency issue. See generally Stafford Serv. Corp. v. State Corp. Comm'n, 220 Va. 559, 563 (1979) (concluding that "in view of the Commission's [ruling on a particular issue], and [the Supreme Court of Virginia's] affirmance of that ruling, the [appellant's remaining] question [was] moot"); cf. generally Logan v. Commonwealth, 47 Va. App. 168, 172 & n.4 (2005) (en banc) (recognizing that a party may concede facts and waive legal issues and that an appellate court need not decide points resolved by concession or waiver).

Consequently, based upon the employer's appropriate concessions, we do not further consider the remaining three assignments of error.[4]

III.  CONCLUSION

We hold that credible evidence in the record supports the Commission's finding that the claimant's back and neck injuries were compensable consequences that arose during treatment in 2018 rather than original injuries sustained at the time of her compensable industrial accident in 2017.  Additionally, in keeping with the employer's appropriate related concessions, we do not consider its assertions that *res judicata* barred the claim, the employer had inadequate notice of the claimant's theory of the case, and the challenged medical treatments were not causally related to the claimant's compensable industrial injury.  Finally, we affirm the Commission's award of benefits for the claimant's back and neck injuries.

Affirmed.

---

[4] We recognize that the Commission did not decide the employer's *res judicata* claim based on its conclusion that the back and neck injuries were compensable consequences rather than original injuries, the rationale upon which the employer has appropriately recognized that its challenge to this issue is moot.  See Vandyke v. Commonwealth, 71 Va. App. 723, 731-32 (2020) (recognizing that an appellate court may affirm for a different reason than applied below when "additional factual findings [are not] necessary").  The Commission reasoned instead that *res judicata* did not apply "[b]ecause the claim for [back and neck] injuries had not yet been filed" when it awarded medical benefits for the claimant's left upper extremity injuries based on the parties' agreement.  The Commission further stated that "[t]o rule otherwise would discourage parties from executing agreement forms and frustrate the purpose of . . . Code § 65.2-701."  It cited in support of that assertion the decision in Williams v. Drug Transport, Inc., JCN VA00000553371 (Va. Workers' Comp. Comm'n Jan. 16, 2014), aff'd, No. 1790-14-2 (Va. Ct. App. Feb. 18, 2015) (*per curiam*) (summarily affirming for the reasons in the Commission's opinion).  We take no position regarding the rationale in Williams.  However, to the extent that it conflicts with any published case decisions in this area, including Advance Auto v. Craft, 63 Va. App. 502 (2014), settled principles hold that the published decisions control.  See generally Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556, 565 n.6 (2011) (recognizing that "unpublished case[s] ha[ve] no precedential value" (citing Rule 5A:1(f))).