COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia

**PUBLISHED**

VITAL LINK, INC. AND
  ARGONAUT INSURANCE COMPANY

OPINION BY
v.        Record No. 1975-17-2          JUDGE ROBERT J. HUMPHREYS
                                        JUNE 19, 2018
DENZIL B. HOPE


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Andrew H. D. Wilson (Two Rivers Law Group, P.C., on brief), for
> appellants.
>
> Brooke T. Alexander (Bradford E. Goodwin; Reid Goodwin PLC, on
> brief), for appellee.


Vital Link, Inc. ("employer"), argues on appeal that the Workers' Compensation

Commission (the "Commission") erred when it considered a claim of compensable consequence

by claimant Denzil B. Hope ("Hope").  Employer argues that the Commission erred in finding

that employer had sufficient notice to defend the claim of compensable consequence, erred in

finding Hope's subsequent injury to be a compensable consequence, and erred in awarding

medical benefits for the compensable consequence injury.  Employer also argues that the

Commission erred in finding sufficient evidence to award Hope continuing wage loss benefits.

## I.  BACKGROUND

It is uncontested that Hope sustained a compensable work-related injury to his left knee

on June 23, 2015.  Beginning on August 18, 2015, Dr. Mark E. Buchanan ("Dr. Buchanan")

began treating Hope for the injury.  Dr. Buchanan diagnosed Hope with a displaced acute medial

meniscus tear of the left knee and chrondromalacia of the left knee, which required surgery.

On September 18, 2015, Dr. Buchanan performed an arthroscopic surgery on Hope's left knee. The procedure included performing a "chondroplasty of the medial femoral condyle til [sic] a smooth well contoured probe stable surface was created." The operative report indicated that the surgery was successful, with no complications. On September 23, 2015, Hope began physical therapy to regain strength and function.

In his post-operative visits and during physical therapy, Hope experienced swelling of his left knee and reported significant pain and discomfort. One post-operative report noted that Hope "has constant pain that gets worse with activity" and that Hope "[g]ets sharp shooting pains as well." After a kenalog and lidocaine injection into Hope's left knee did not ease his pain, Dr. Buchanan scheduled an MRI for December 15, 2015.

On December 29, 2015, Dr. Buchanan reviewed the MRI of Hope's left knee. According to Dr. Buchanan's office note, the MRI showed a "subchondral fracture" of Hope's "medial femoral condyle." Dr. Buchanan also described "full-thickness loss" of cartilage within the joint. Discussing the injury further, Dr. Buchanan noted that "[t]he fracture has the appearance of a stress fracture" that "was not present on his previous MRI so is [sic] not directly related to his work injury but may be due to stresses on his knee during his postop healing."

In January 2016, Dr. Buchanan released Hope to all activities even though Hope continued to experience pain and swelling in his left knee. In a letter dated January 13, 2016, employer's claim administrator informed Hope that his benefits were terminated and that she would "deny any medical bills related to the fracture of the right knee[1] as this is not compensable under the Workers' compensation claim." Hope was scheduled for a follow-up appointment with Dr. Buchanan on January 29, 2016, but Hope cancelled on January 28, 2016.

---

[1] The letter discusses a fracture found after reviewing the MRI of Hope's *left* knee, but then mistakenly refers to the right knee in the last sentence of the letter.

Hope returned to work with a different employer in late March 2016. After doing so, however, Hope's left knee "began to swell" and he experienced significant pain. On May 11, 2016, Hope visited his family physician, Dr. Ghayth M. Hammad ("Dr. Hammad"). Hope did not return to see Dr. Buchanan because it was Hope's understanding that Dr. Buchanan was unavailable. Dr. Hammad removed fluid from Hope's left knee, but Hope's symptoms did not abate. Dr. Hammad subsequently arranged for Hope to receive treatment from Dr. Sameer G. Badarudeen ("Dr. Badarudeen"), an orthopedic surgeon.

Hope obtained permission from employer's claim administrator to receive a new MRI from Dr. Badarudeen. While waiting for the new MRI, Dr. Badarudeen removed fluid from Hope's knee and noted Hope's constant pain. Also, in an office note dated June 20, 2016, Dr. Badarudeen stated that upon his review of Hope's MRI from December 15, 2015, Hope's femur fracture was "related to his Worker's Comp. injury" without any further discussion. On June 27, 2016, Dr. Badarudeen took a new MRI and compared it to the December 15, 2015 MRI. According to Dr. Badarudeen, the new MRI "showed full-thickness cartilage loss and . . . tricompartmental disease[.]" Based on the ineffectiveness of previous conservative treatments, Dr. Badarudeen recommended a left total knee replacement.

On July 14, 2016, Hope filed a claim for temporary total disability benefits from May 11, 2016, and continuing. On the line titled "Parts of Your Body Injured," Hope wrote "[i]t was my left knee. Done [sic] had one surgery and waiting on a second one." Hope did not mark the box indicating he sought a lifetime award of medical benefits.

On October 17, 2016, Dr. Badarudeen performed a left total knee replacement on Hope. Prior to the surgery, employer's claim administrator informed both Hope and Dr. Badarudeen's office that employer would not pay for Dr. Badarudeen's treatment of Hope's left knee.

Prior to the scheduled hearing before the deputy commissioner, Hope moved for a continuance and a *de bene esse* deposition of his cousin, Ann Howard, who was expected to testify regarding her conversation with employer's claim administrator about Hope's medical treatment with Dr. Badarudeen.[2] Employer objected, noting to the deputy commissioner that there was "currently only one issue pending before your Honor and that is . . . [Hope's] claim for temporary total disability benefits." According to employer, Ann Howard's testimony was therefore irrelevant to the issue before the deputy commissioner. Hope countered that a "request for medical benefits is implicit in the filing of an application for benefits." Ruling on the issue, the deputy commissioner granted Hope's motion for a *de bene esse* deposition after finding it appropriate under the circumstances.

Following the hearing, the deputy commissioner found that employer had sufficient notice that Hope was seeking medical benefits. As a result, the deputy commissioner awarded both wages and medical benefits, including compensation for the left total knee replacement performed by Dr. Badarudeen. On November 7, 2017, the full Commission affirmed the deputy commissioner, finding that "the record demonstrates [that Hope's] stress fracture was a compensable consequence of his original injury." The Commission also found that because employer's insurer denied responsibility for that injury "[Hope] was free to select a physician of his choosing." As a result, the Commission found that employer was "responsible for the reasonable, necessary, and casually related medical treatment rendered by Dr. Badarudeen." Finally, the Commission concluded that evidence in the record established Hope's ongoing

---

[2] A *de bene esse* deposition is the sworn testimony of a witness taken in anticipation that the witness will be unavailable to attend a scheduled trial or hearing. The record reflects that, during the pertinent time, Ann Howard was unavailable for the scheduled hearing because she resided in Kentucky, underwent surgery, and was unable to travel.

- 4 -

disability and that the evidence indicated the need for left total knee replacement surgery. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"Although we defer to the commission in its role as fact finder, we 'review questions of law *de novo*.'" Nelson Cty Sch. v. Woodson, 45 Va. App. 674, 677, 613 S.E.2d 480, 482 (2005) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (*en banc*)). "While we review questions of law *de novo*, we construe the Workers' Compensation Act liberally for the benefit of employees to effectuate its remedial purpose of making injured workers whole." Advance Auto & Indem. Ins. Co. v. Craft, 63 Va. App. 502, 514, 759 S.E.2d 17, 23 (2014) (referencing Fairfax Cty. Sch. Bd. v. Humphrey, 41 Va. App. 147, 154-55, 583 S.E.2d 65, 68 (2003)).

### B. Compensable Injuries Under the Act

"An injury comes within the scope of the [Workers' Compensation] Act if it results from an accident arising out of and in the course of the injured employee's employment." Simms v. Ruby Tuesday, Inc., 281 Va. 114, 120, 704 S.E.2d 359, 362 (2011). "When an employee sustains such an injury, the Act provides the sole and exclusive remedy available against the employer." Id. (quoting Butler v. Southern States Coop., Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005)). An employer is required under the Act to furnish all medical services that are "necessary services incident to the treatment of an injury sustained in a compensable accident." Haftsavar v. All Am. Carpet and Rugs, Inc., 59 Va. App. 593, 599, 721 S.E.2d 804, 807 (2012) (quoting Ins. Mgmt. Corp. of Tidewater/Baldwin Bros. & Taylor v. Daniels, 222 Va. 434, 439, 281 S.E.2d 847, 849 (1981)). Subject to review by the Commission, "the employer is responsible for medical attention if (1) a causal relationship exists between the workplace

accident and the treatment, and (2) the attending physician deems it necessary. The claimant, however, bears the burden of proving by a preponderance of the evidence that disputed treatment was medically necessary." Advance Auto, 63 Va. App. at 523, 759 S.E.2d at 28 (quoting Haftsavar, 59 Va. App. at 599, 721 S.E.2d at 807).

Derivative injuries that follow and flow from the original workplace accident may also be compensable. "The doctrine of compensable consequences allows a claimant to recover for injuries that result from an industrial accident even if those injuries do not manifest during the initial industrial accident, but rather, develop at some point in the future." Anderson v. Anderson, 65 Va. App. 354, 363, 778 S.E.2d 132, 136 (2015) (referencing Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 751, 601 S.E.2d 693, 697 (2004)). "When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment, every natural consequence that flows from the injury is compensable if it is a direct and natural result of a primary injury." Bd. of Supervisors v. Martin, 3 Va. App. 139, 141, 348 S.E.2d 540, 541 (1986) (referencing Womack, Inc. v. Ellis, 209 Va. 588, 591, 166 S.E.2d 265, 268 (1969)).

"The simplest application of this principle is the rule that all the medical consequences and *sequelae* that flow from the primary injury are compensable." Berglund, 43 Va. App. at 750, 601 S.E.2d at 697 (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.01 (2003)). When "an initial medical condition itself progresses into complications more serious than the original injury; the added complications are of course compensable." 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.02 (2018). Moreover, "aggravation of the primary injury by medical or surgical treatment is compensable." Id. § 10.09; see also Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99-100 (1977) (distinguishing a new and separate injury "from a progression, deterioration, or aggravation of

the injury sustained in the original industrial accident[,]" which constitutes a "change in condition").

In Immer & Co. v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967), our Supreme Court extended the doctrine of compensable consequences to include a subsequent injury to a different body part when the subsequent injury bears a sufficient causal connection to the first injury. See Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 22-23, 622 S.E.2d 233, 237-38 (2005); see also Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 797, 407 S.E.2d 1, 5 (1991) (holding that "the doctrine of compensable consequences is applicable both to aggravation of a prior compensable injury and a new injury for the purposes of establishing compensability of the subsequent injury"). "Under these circumstances, 'the second injury is treated as if it occurred in the course of and arising out of the employee's employment.'" Farmington Country Club, 47 Va. App. at 23, 622 S.E.2d at 237 (quoting Leonard, 218 Va. at 214, 237 S.E.2d at 100). The issue in determining compensability "is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications." Berglund, 43 Va. App. at 751, 601 S.E.2d at 697 (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.02 (2003)).

"[T]he Workers' Compensation Act provides that, 'as long as necessary after an accident, the employer *shall* furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee . . . and [any] other necessary medical attention' related to the compensable injury." Woodson, 45 Va. App. at 678, 613 S.E.2d at 482 (quoting Code § 65.2-603(A)(1)) (alterations in original). "Because 'this statutory duty on the employer is mandatory,' an injured employee is automatically entitled to receive medical benefits once the fact of a compensable injury has been established." Id. at 678, 613 S.E.2d at 483 (quoting Cash v. Am. Health Ins. Corp., 203 Va. 719, 721, 127 S.E.2d 119, 121 (1962)). "This entitlement

cannot be negated by the employee's failure to specifically request an award of medical benefits in [his] application to the commission."  Id.

      C.  Whether the Commission violated Employer's Procedural Due Process Rights

Employer argues that the "Commission erred by denying [employer's] due process rights when it considered a claim of compensable consequence *sua sponte* without notice to [employer], and the Commission erred in finding that '[employer] had sufficient notice to defend a claim of a left knee fracture' causally related to a compensable consequence of [Hope's] original accident injury."

What constitutes sufficient notice in this case for the left femur fracture depends on the nature and timing of the compensable consequence.  This Court has held

> that the doctrine of compensable consequences is applicable both to aggravation of a prior compensable injury and a new injury for the purposes of establishing compensability of the subsequent injury.  Where the subsequent injury is a new injury, the provisions of Code § 65.1-87 [now § 65.2-601] are applicable from the date of that new injury.  When the subsequent injury is a change in condition, the provisions of Code § 65.1-99 [now § 65.2-708] are applicable.

Bartholow, 12 Va. App. at 797, 407 S.E.2d at 5.  Accordingly, we have found that where a subsequent injury is a new injury to a different body part, the claimant may be required to file a new claim with the Commission to satisfy the requirements of Code § 65.2-601.  See, e.g., Leonard, 218 Va. at 215, 237 S.E.2d at 100 (reversing an award for compensable consequence where the employer had timely notice of the new injury but the claimant did not timely file an application with the Commission for the new injury); see also Sturtz v. Chesapeake Corp., 38 Va. App. 672, 677, 568 S.E.2d 381, 384 (2002) ("[When] the subsequent injury is the result of a new and separate accident, not a change in condition . . . , the new and separate injury arising out of the first injury requires the claimant to give notice to employer of the accident and to file a

claim with the commission with the time limitations described in Code § 65.1-87 (now Code § 65.2-601).").

In contrast, a change of condition is not a new injury but is "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation." Code § 65.2-101. "Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may *review any award* of compensation and on such review may make an award ending, diminishing or increasing *the compensation previously awarded . . . .*" Code § 65.2-708 (emphasis added). Where the compensable consequence is a change in condition of the original injury after the award, a new claim in not required. See Sergio's Pizza v. Soncini, 1 Va. App. 370, 375, 339 S.E.2d 204, 207 (1986) ("In fact, the Commission is authorized to conduct a review for change of condition on its own motion at any time, subject to due process limitations.").

Here, neither Code § 65.2-601 nor Code § 65.2-708 applies. The only body part at issue is the medial femur condyle of the left knee.[3] Dr. Buchanan treated the area during arthroscopic surgery when he trimmed and smoothed the cartilage. Dr. Buchanan later found the fracture in that area of the knee and tried various treatments. Accordingly, the subchondral fracture of the left femur condyle at issue here is not a new injury to a different body part; as factually determined by the Commission, it was a subsequent injury in the form of a stress fracture to the very same area of the left knee directly related to the surgical reshaping of a portion of the knee

---

[3] Those who suffer workplace injuries typically lack the precision in describing an injured body part that a medical professional would use. It is sufficient to use the commonly understood name for a body part when notifying an employer or the Commission of injuries resulting from a workplace accident. The term "knee" generally refers to "a joint . . . in the middle part of the human leg that is the articulation between the femur, tibia, and patella . . . the part of the leg that includes this joint[.]" Knee, Webster's Third New International Dictionary (1993); see also Vol. 2 Lawyers' Medical Cyclopedia § 11.27 (6th ed. 2017).

done as part of the procedure to repair the damage from the original workplace injury. Hope was not required to file a claim for new injury under Code § 65.2-601. Neither could the Commission review the award for change of condition pursuant to Code § 65.2-708 because no award had yet been given. Until now, we have not had occasion to address notice requirements for compensable consequences, such as aggravation or complications due to medical treatment, to the original injury that occur *prior* to the initial award.

The Act focuses on treatment to the injured body part. It requires employer to provide medical benefits related to Hope's compensable injury "as long as necessary after [the] accident" and "[any] other necessary medical attention *related* to the compensable injury." See Woodson, 45 Va. App. at 678, 613 S.E.2d at 482 (quoting Code § 65.2-603(A)(1)) (emphasis added). An employer is responsible for the medically necessary treatment regardless of claimant's "failure to specifically request an award of medical benefits in [his] application to the commission." See id. at 678, 613 S.E.2d at 483. Moreover, "we have held that, as long as the employee's application for benefits provides an employer with notice 'of the potential issues in a case,' the claim will satisfy 'minimal due process safeguards.'" Id. at 681, 613 S.E.2d at 483 (quoting Johnson v. Paul Johnson Plastering, 37 Va. App. 716, 723, 561 S.E.2d 40, 44 (2002), rev'd in part on other grounds, 265 Va. 237, 576 S.E.2d 447 (2003)); Code § 65.2-708.

Accordingly, we hold that since notice of a workplace injury claim to an employer is also sufficient notice that any medical treatment in the record of injured body parts listed in the claim of benefits *may* be the basis of an award by the Commission, such notice necessarily includes the reasonable *possibility* of subsequent deterioration or complications of the primary injury or aggravation of the primary injury due to medical or surgical treatment. If an employer wishes to defend against compensability for any or all of the treatment to the body part or parts listed on the claim form, it must do so at the hearing.

This reasoning comports with the principles of *res judicata* as well.

> Virginia's application of the claim preclusion component of *res judicata* was best stated a century ago: "Every litigant should have opportunity to present whatever grievance he may have" but if given an opportunity to do so and "having failed to avail himself of it, he must accept the consequences." Miller v. Smith, 109 Va. 651, 655, 64 S.E. 956, 957 (1909). Thus, the "effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time." Smith v. Holland, 124 Va. 663, 666, 98 S.E. 676, 677 (1919).

Brock v. Voith Siemens Hydro Power Generation, 59 Va. App. 39, 46, 716 S.E.2d 485, 488 (2011). "These principles apply to workers' compensation cases." Id. at 47, 716 S.E.2d at 488. Thus, "[a final award by the Commission] 'bars relitigation of the same cause of action, or any part thereof which could have been litigated between the same parties and their privies.'" K & L Trucking Co. v. Thurber, 1 Va. App. 213, 219, 337 S.E.2d 299, 302 (1985). Where subsequent injury to the body part at issue in an initial claim is known to the parties and evidenced in the record, it is properly considered by the Commission as part of the initial award.

Given our holding that, for the purpose of procedural due process, notice of a claim for medical benefits is also implied notice of potential subsequent medical complications for the treatment of injuries to the named body part(s) injured, it only remains to determine if employer knew, or reasonably should have known, of any subsequent medical complications.

Here, the subsequently discovered fracture of the medial condyle of Hope's left femur was part of the left knee, the only body part at issue in his claim. Employer was clearly aware of the medical treatment by Dr. Badarudeen as evidenced by its denial of those medical benefits, its correspondence with the Commission, its submission of medical records to the Commission, and its cross-examination of witnesses regarding Dr. Badarudeen's treatment. Even though Hope did not check the box stating that he was seeking a medical award in his claim for benefits, he was

- 11 -

not required to do so.  See Woodson, 45 Va. App. at 678, 613 S.E.2d at 483.  He clearly stated on the claim form that the injured body part was "my left knee.  Done [sic] had one surgery and waiting on a second one."  Because the body part listed on the claim was the body part at issue, no award had yet been entered, and the medical treatment was in the record provided to employer, Hope was not required to file a new claim to provide notice to employer.  We conclude that the Commission did not err in finding employer had sufficient notice that treatment by Dr. Badarudeen, including the subsequent left total knee replacement surgery, would be a potential issue at the hearing.

### D.  The Fracture was a Compensable Consequence

Employer further argues that the Commission erred in finding the left knee fracture to be a compensable consequence and in awarding Hope medical benefits for the treatment provided by Dr. Badarudeen.

Under the Act, Hope was allowed to recover for "all the medical consequences and *sequelae* that flow from the primary injury."  Berglund, 43 Va. App. at 750, 601 S.E.2d at 697.  This included both complications of the original injury and aggravation of the primary injury caused by medical or surgical treatment.  See Woodson, 45 Va. App. at 679, 613 S.E.2d at 483; see also 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.09 (2018).  Employer acknowledges that the fracture was discovered when Dr. Buchanan ordered an MRI due to Hope's continued pain after arthroscopic surgery.  The Commission found that the MRI showed "a fracture of the medial femoral condyle with full thickness loss of articular cartilage."  Dr. Buchanan noted in the medical record that the fracture could be explained by stresses on the knee during post-operative healing and he attempted to treat the fracture as part of the left knee healing.  Neither physical therapy nor injections into Hope's knee resolved the pain.  The Commission noted that the treating physician "advised [Hope] to avoid bearing weight on

his left lower extremity." Despite Hope's continued pain in his left knee, Dr. Buchanan released him to full duty.

The Commission concluded that "Dr. Badarudeen's finding that there was a definite connection between [Hope's] stress fracture and his original injury, when considered along with Dr. Buchanan's opinion that the stress fracture could be related to postoperative healing, is sufficient to establish the subchondral fracture was a compensable consequence of [Hope's] original injury." The Commission did not err. The Commission as the factfinder concluded, and the evidence in the record in the light most favorable to Hope, as the party that prevailed below, supports the conclusion that the fracture found in the left knee was a complication or aggravation of the primary injury, which is compensable. See 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.09 (2018). It was discovered during post-operative treatment and both Dr. Buchanan and Dr. Badarudeen diagnosed the problem as cartilage loss in the area of the injury. Dr. Buchanan attributed the cause to post-operative healing from the surgery, and Dr. Badarudeen linked the cartilage loss to the workplace injury. Hope testified that he suffered ongoing pain and swelling of the left knee immediately after the first surgery. Dr. Badarudeen's treatment to address Hope's continued pain and swelling in his left knee was thus compensable.

### E. Change in Treating Physician

Employer argues the Commission erred in ruling that Hope was free to seek unauthorized treatment with Dr. Badarudeen and in awarding compensation for that treatment. It argues that if Hope continued to have pain and swelling in his knee, he should have returned to Dr. Buchanan.

"As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention." Code § 65.2-603(A)(1). "We have held that the employer's denial of

- 13 -

liability under the Act is equivalent to a refusal to provide the employee with medical services. The employer cannot refuse to provide the employee with full medical service and also insist that he seek medical care only from physicians it selects." Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128, 384 S.E.2d 333, 338 (1989). "[W]here an insurer denies liability and refuses to pay compensation, the claimant is entitled to choose his own physician." Trammel Crow Co. v. Redmond, 12 Va. App. 610, 615, 405 S.E.2d 632, 635 (1991).

> If in an emergency or on account of the employer's failure to provide the medical care during the period herein specified, or for other good reasons, a physician other than provided by the employer is called to treat the injured employee, during such period, the reasonable cost of such service shall be paid by the employer if ordered so to do by the Commission.

Code § 65.2-603(C). "Without a referral from an authorized treating physician, Code § 65.2-603(C) provides for treatment by an unauthorized physician in an 'emergency' or 'for other good reason.'" Shenandoah Products, Inc. v. Whitlock, 15 Va. App. 207, 212, 421 S.E.2d 483, 485 (1992).

> [I]f the employee, without authorization but in good faith, obtains medical treatment different from that provided by the employer, and it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, the employer should be responsible, notwithstanding the lack of prior approval by the employer.

Id. at 212, 421 S.E.2d at 486.

Here, Hope notified employer that he continued to experience pain and swelling in his knee after Dr. Buchanan had released him to full duty. Hope consulted with employer's claim administrator before seeing Dr. Badarudeen for another opinion on his left knee pain. The record indicates that the claim administrator authorized Dr. Badarudeen to take an MRI of Hope's left knee "without prejudice." Nothing in the record indicates that employer instructed Hope to

return to Dr. Buchanan. The Commission did not err in concluding that Hope's actions were a good faith attempt to procure appropriate medical attention. See id. Dr. Buchanan released Hope to full duty even though Hope continued to experience pain and swelling in his knee. Hope was in constant pain, and his family doctor had removed a large volume of fluid from the knee on several occasions. Hope sought advice from both employer's claim administrator and his cousin, who was deposed in this case. Evidence supported a conclusion by the Commission that Dr. Buchanan's treatment was inadequate and that Dr. Badarudeen's treatment was "medically reasonable and necessary" under the circumstances. See id. Accordingly, "employer should be responsible, notwithstanding the lack of prior approval by the employer." Id. Moreover, when employer denied liability for further treatment of Hope's left knee and refused to pay for the left knee replacement, Hope was entitled to choose his own treating physician. See Redmond, 12 Va. App. at 615, 405 S.E.2d at 635.

Because treatment of Hope's left knee was covered as either the original injury or an aggravation of the injury, the medical treatment of the left knee was compensable. Employer was required to provide, "as long as necessary after an accident," compensation for medical expenses "and [any] other necessary medical attention related to the compensable injury." Woodson, 45 Va. App. at 678, 613 S.E.2d at 482. The Commission did not err in concluding that Hope was justified in seeking treatment with Dr. Badarudeen and that employer was responsible for the medical expenses.

F. Continuing Wage Loss

Finally, employer argues that the Commission erred in awarding Hope continuing wage loss benefits because a "To Whom It May Concern" note was not sufficient to meet Hope's burden of proving ongoing disability.

- 15 -

A party seeking workers' compensation bears the burden of proving his disability and the periods of that disability. See Hoffman v. Carter, 50 Va. App. 199, 216, 648 S.E.2d 318, 327 (2007). Furthermore, "[t]here is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time." Id. (alterations in original) (quoting Marshall Erdman & Assocs. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149 (1997)). Whether Hope suffered a continuing disability is a question of fact. Id. "[W]e are bound by the commission's factual findings supported by credible evidence, despite the fact that there may be evidence to support a contrary finding." Id. at 209, 648 S.E.2d at 323 (referencing Watkins v. Halco Eng'g., Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983)).

"The opinion of the treating physician is entitled to great weight, although the commission is not required to accept it[.]" United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238, 708 S.E.2d 418, 427 (2011) (referencing Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986)). The Commission accepted as evidence of Hope's disability a letter on clinic letterhead, which listed Dr. Badarudeen by name, addressed "To Whom It May Concern."[4] Dated August 31, 2016, the letter stated that Hope would be absent from work from May 13 through October 3, 2016. It noted that surgery was scheduled for October 3, 2016. The Commission was permitted to afford "great weight" to the note since, at that time, Dr. Badarudeen was Hope's treating physician. See id. The Commission also expressly noted Hope's "ongoing symptoms, conservative treatment that had been provided without granting relief, and that damage to the claimant's cartilage 'was far too advanced to have any kind of

---

[4] Employer argues that the Commission erred in accepting the letter because it was addressed "To Whom It May Concern." We note that employer relies upon Dr. Buchanan's "To Whom It May Concern" letter to show Hope was released to full duty. In contrast to Dr. Buchanan's unsigned, typed letter, Dr. Badarudeen's letter had handwritten information in the blanks and was signed, though the signature was not identified. Unlike Dr. Buchanan's letter, Dr. Badarudeen's letter was on a medical center letterhead with his name pre-printed at the top.

cartilage restorative surgery.'"  Because evidence in the record supported the Commission's factual finding that Hope had established an ongoing disability, we will not disturb it.  See Hoffman, 50 Va. App. at 209, 648 S.E.2d at 323.

III.  CONCLUSION

Hope's compensable left knee injury included the related post-surgical subchondral fracture of the left femur.  Because the subsequent aggravation of the injury occurred before the initial award by the Commission and employer was aware of the medical treatment at issue, employer had sufficient notice that the treatment could be included in the award.  The Commission did not err in any respect in awarding benefits based upon Hope's evidence of continuing disability.  Accordingly, we affirm the Commission's decision.

Affirmed.