COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Callins, White and Bernhard


DUKE STREET LIBERTY, INC., ET AL.

                                                     MEMORANDUM OPINION[*]

v.      Record No. 1295-24-1                             PER CURIAM
                                                    SEPTEMBER 30, 2025

SHIMELIS GUDETA


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

     (Christopher M. Kite; Lucas & Kite, PLC, on brief), for appellants.

     (Christian J. Kline; Injured Workers Law Firm, on brief), for
     appellee.


Duke Street Liberty, Inc. (Duke Street) appeals the Virginia Workers' Compensation

Commission's award of temporary total disability benefits to Shimelis Gudeta, beginning from

the date of his workplace assault and continuing. Duke Street argues the Commission erred by:

(1) affirming the award of disability benefits that was based on speculation and not factual

evidence; (2) finding that Gudeta was totally disabled from his work injuries; (3) failing to hold

Gudeta to his burden of proving he marketed his residual working capacity; and (4) affirming

Gudeta's entitlement to continuing disability benefits. Finding no error, we affirm.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The panel unanimously holds that oral argument is unnecessary because "the facts and
legal arguments are adequately presented in the briefs and record, and the decisional process would
not be significantly aided by oral argument." Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND[2]

While working as a gas station cashier for Duke Street on April 29, 2023, Gudeta suffered injuries to his face, teeth, jaw, and lips and post-traumatic stress disorder (PTSD) when he was assaulted during a robbery. The assailant struck Gudeta with something he was holding, which Gudeta thought was a gun. Gudeta feared for his life and did not understand what was happening. He felt lightheaded, fell, and bled a lot.

Gudeta sought treatment at Inova Fairfax Hospital, where he saw Dr. Imad E. Shami, an oral and maxillofacial surgeon, who diagnosed a closed fracture of the left side of the maxilla and dental injury. Dr. Shami performed surgery on Gudeta to reduce the bone fracture, repair a laceration, and extract a tooth. Gudeta's intraoperative exam showed the fracture involved three of his teeth and other teeth were mobile from either his trauma, periodontal disease, or a combination of both. Dr. Shami instructed Gudeta not to engage in heavy lifting, strenuous exercises, or contact sports, to avoid trauma to his mouth and face, and to follow up with his dentist and Dr. Shami.

After surgery, Gudeta experienced a lot of headaches, pain, anxiety, and worry. He also had trouble sleeping and suffered nightmares where his assailant would "show up." Gudeta followed up with Dr. Shami three times over the next seven weeks. While his trauma wounds healed, he continued to experience pain with his teeth and had mobility issues with some of his teeth. Dr. Shami informed Gudeta about his advanced periodontal disease and his likely need for extraction of "hopeless teeth." On May 11, Dr. Shami reminded Gudeta not to engage in heavy lifting, contact sports, or strenuous activities, but he did not repeat these recommendations on follow up visits.

---

[2] Under familiar appellate principles, we state the facts in the light most favorable to Gudeta, the prevailing party before the Commission. *City of Charlottesville v. Sclafani*, 300 Va. 212, 223 (2021).

As instructed by Dr. Shami, Gudeta also saw his dentist, Moutaz Abdeen, DDS, who gave him a comprehensive treatment plan for his teeth. When Gudeta returned to Dr. Abdeen on June 15, Gudeta was not ready to proceed with treatment, so Dr. Abdeen told him to schedule treatment as soon as possible. After about six weeks, Dr. Abdeen referred Gudeta to a specialist, and Gudeta saw Dr. Lauren Hagspiel, a dentist with HeadsUp Healthcare.

Gudeta also treated with Dr. Connie Le, a primary care physician. He told Dr. Le about the incident and his resulting feelings. Dr. Le did a general checkup and referred him to a PTSD counselor, who took over care of that condition. By a July 13 letter, Dr. Le noted Gudeta's examination and referral and excused him from work while he recovered from his health issues following the robbery. After the referral, Gudeta returned to Dr. Le and told her about "headaches and things like that," and Dr. Le treated him and gave him pain medication. Dr. Le wrote a second letter on September 26 excusing Gudeta for any missed work after the robbery and noting that Gudeta was being treated by a mental health specialist. In January 2024, Dr. Le agreed that Gudeta should remain out of work until cleared by the mental health specialist treating him for PTSD.

Gudeta treated with Dr. Hagspiel beginning in August 2023, and Gudeta's son provided details about his father's assault and ongoing teeth problems. Dr. Hagspiel related Gudeta's work injury to her clinical findings of his extracted teeth and the mobility of other teeth, recommending extraction of all but one of the mobile teeth and replacement with partial dentures. She agreed with the previous provider notes that the extracted teeth were lost "as a result of the attack" and that the anterior teeth were mobile. She also attributed Gudeta's preexisting "[p]eriodontal disease resulting in bone loss" to her clinical findings. Dr. Hagspiel noted, without further comment, that Gudeta did not have any work restrictions. Gudeta followed Dr. Hagspiel's treatment plan, had teeth extracted, and was fitted with partial dentures.

Following Dr. Le's referral, Gudeta also began treating in August 2023 with Hiyawkal Gizachew, a licensed mental health therapist and clinical social worker. She noted that Gudeta's primary care doctor referred him to her because of "significant emotional and psychological distress related to the trauma he experienced" from the assault at work. Gudeta met with Gizachew bi-weekly for individual therapy to help him with his PTSD symptoms, including depression, flashbacks, nightmares, intrusive thoughts, inadequate sleep and exhaustion, low energy, irritability, and anxiety. She also noted that Gudeta had severe headaches and body pain. Gudeta reported to Gizachew during therapy sessions that although he tried to keep himself occupied, he had difficulty concentrating and staying on task.

In December, Gizachew reported that Gudeta continued to experience significant symptoms related to his work trauma. Gizachew was focusing her treatment on helping Gudeta reduce his PTSD symptoms so he could "resume normal daily functioning." Gizachew found Gudeta's presentation fully consistent "with that commonly observed in survivors who are victims of crime" and wholly consistent "with someone who has undergone a traumatic experience."

The deputy commissioner conducted an evidentiary hearing on February 5, 2024. Gudeta sought medical benefits for his injuries and disability benefits beginning April 29, 2023. Duke Street defended the claim on the grounds that (1) Gudeta's PTSD was not related to his work injuries[3]; (2) some of Gudeta's teeth were not injured in the work incident; (3) he was not disabled to the extent alleged; and (4) he did not market his residual work capacity. The deputy commissioner admitted Gudeta's medical records into evidence, and Gudeta testified consistent with the above facts.

---

[3] Duke Street did not challenge that Gudeta's PTSD was related to his work injuries on review before the Commission and does not do so on appeal.

The deputy commissioner found that after the assault Gudeta was hospitalized, treated for lacerations and injuries to his face and teeth, and underwent surgery. She also found that following surgery Gudeta "experienced a lot of worry, anxiety, headaches, nightmares about the assailant, and a lot of pain." The deputy found that Gudeta suffered from PTSD causally related to his work injury and that Gudeta was totally disabled beginning with his hospitalization on April 29. The deputy awarded Gudeta temporary total disability benefits continuing from April 29 and medical benefits for Gudeta's face, teeth, jaw, and lip injuries, and PTSD.

On review, the Commission affirmed. It considered the medical records from Inova Fairfax Hospital, Dr. Abdeen, Dr. Le, Dr. Hagspiel, and Gizachew and concluded that the deputy commissioner did not err in awarding disability beginning with Gudeta's hospitalization and continuing. The Commission found that Dr. Le "repeatedly opined that the claimant should be excused from employment" because of "the injuries sustained during the compensable accident." The Commission also found that the dentist, who denied that Gudeta had any work restrictions, did not consider Gudeta's PTSD. Duke Street appealed.

ANALYSIS

An award of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." *Id.* "Medical evidence is not necessarily conclusive, but is subject to the [C]ommission's consideration and weighing." *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 176 (1996) (quoting *Hungerford Mech.*

*Corp. v. Hobson*, 11 Va. App. 675, 677 (1991)).  Questions raised by conflicting medical opinions must be decided by the Commission.  *Paramont Coal Co. Virginia, LLC v. McCoy*, 69 Va. App. 343, 358 (2018).

"A party seeking workers' compensation bears the burden of proving his disability and the periods of that disability."  *Jalloh v. Rodgers*, 77 Va. App. 195, 207 (2023) (quoting *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018)).  "[T]here is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time."  *Id*.  But "[t]he period of a claimant's disability is a question of fact."  *Id*.  When determining disability, "[t]he opinion of the treating physician is entitled to great weight, although the [C]ommission is not required to accept it."  *Vital Link, Inc.*, 69 Va. App. at 64 (quoting *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011)).

"A partially incapacitated employee, absent an award from the [C]ommission, is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work."  *White v. Redman Corp*., 41 Va. App. 287, 292 (2003).  But if an employee is totally disabled, there is no such requirement for an award of temporary total disability benefits.  *See A.G. Van Metre, Jr., Inc. v. Gandy*, 7 Va. App. 207, 216 (1988) (holding that the marketing rule did not apply when the employee was found to be totally disabled).

Duke Street argues that the Commission's award lacked evidentiary support and rested on impermissible speculation.  It states that the Commission improperly assigned Dr. Le's opinions the weight of a treating physician and that Dr. Le failed to detail the facts supporting her conclusion that Gudeta could not return to work.  Duke Street asserts Gizachew's records are insufficient to establish disability because she did not specifically address that issue.  Additionally, it also claims that treatment records from other providers establish that Gudeta was, at most, only partially disabled for a limited time and that Gudeta had not marketed his residual work capacity.  Finally,

Duke Street maintains that a preexisting condition, rather than the assault, caused Gudeta's continuing dental problems.

The Commission's award, however, is supported by evidence found in the record. In addition to his dental injuries,[4] pain, and headaches, Gudeta exhibited mental health symptoms following his trauma surgery. He experienced anxiety, worry, difficulty sleeping, and nightmares. During a visit with Dr. Le, Gudeta discussed the assault and the physical and emotional toll it had taken on him. Dr. Le referred Gudeta for treatment by a mental health specialist due to the severity of his condition. As a result, Dr. Le excused Gudeta from work to allow him time to recover from his health problems.

Following Dr. Le's referral, Gudeta began treatment in August 2023 with Gizachew, a licensed mental health therapist and clinical social worker. Gudeta underwent bi-weekly PTSD therapy but continued to experience significant and numerous symptoms. Although he tried to keep himself occupied, Gudeta had difficulty concentrating and staying on task. Gizachew focused her treatment on helping Gudeta reduce his PTSD symptoms so he could "resume normal daily functioning." Gudeta also returned to Dr. Le with complaints of headaches and related symptoms, and Dr. Le provided treatment and prescribed pain medication. Therefore, Dr. Le continued to excuse Gudeta from work.

Based on the evidence in the record, we conclude that Dr. Le treated Gudeta for injuries sustained in the workplace assault and excused him from work based on her firsthand observations during treatment. The Commission was entitled to accord Dr. Le's opinion significant weight as that of a treating physician. *Vital Link*, 69 Va. App. at 64. When the record contains evidence supporting the Commission's decision, it does not matter that certain other record evidence may

---

[4] Contrary to Duke Street's argument, Dr. Hagspiel opined that Gudeta's teeth problems which she addressed were related to his work injury.

suggest Gudeta was only partially disabled or that his injuries did not prevent him from working. *Jeffreys*, 297 Va. at 87. Here, the Commission relied on Dr. Le's decision to remove Gudeta from work and noted that the dentist, who imposed no work restrictions, did not consider Gudeta's PTSD. Given such factual determinations, the Commission was not required to accept other treating physicians' attenuated opinions when determining Gudeta's disability. *Vital Link*, 69 Va. App. at 64.

The Commission's disability finding was based on both Gudeta's physical injuries and his mental health condition. Duke Street's focus on Gudeta's dental injuries overlooks the significant PTSD symptoms that supported the Commission's determination of total disability. None of the dental providers, including those who treated Gudeta prior to Dr. Le, addressed the impact of his PTSD on his ability to work. Given the severity of Gudeta's PTSD symptoms, the record supports a finding of total disability, including during the limited period before he began treatment with Dr. Le. Because the Commission found Gudeta to be totally disabled, he had no obligation to market his residual work capacity. *Gandy*, 7 Va. App. at 216.

CONCLUSION

For the foregoing reasons, the Commission's judgment is affirmed.

*Affirmed.*