COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia

PUBLISHED

SEAVIEW APARTMENTS, LLC

                                        OPINION BY
v.      Record No. 2009-24-1       CHIEF JUDGE MARLA GRAFF DECKER
                                      JANUARY 20, 2026

CITY OF NEWPORT NEWS

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge[1]

Nicholas Anthony Nunes (David, Kamp & Frank, L.L.C., on briefs),
for appellant.

Pamela P. Bates, Deputy City Attorney, for appellee.


Seaview Apartments, LLC, appeals an award of damages for unpaid water and sewer

services owed to the City of Newport News.  In the circuit court, Seaview Apartments filed a

plea in bar, arguing that part of the suit was barred because the City had previously filed suit for

three months of unpaid water and sewer services and received a judgment in its favor.  Seaview

reasoned that the City was precluded from filing a second suit to collect for the months that it

could have included in its first suit.  The court denied the plea in bar and proceeded with trial.  It

ultimately awarded the City $98,480.68 plus costs.  For the reasons that follow, we hold that the

City impermissibly split its claim and, therefore, the court erred in part by denying the plea in

bar.  Consequently, we reverse the decision and remand the case to the circuit court.

---

[1] Since this proceeding, Judge Mills has retired.

The City of Newport News provided water and sewer services to an apartment building owned by Seaview Apartments, LLC. Over the course of this relationship, which lasted from March 2020 through November 2023, Seaview was consistently delinquent in paying the City for the utility services it received.

In December 2022, the City filed a warrant in debt in general district court for three unpaid water and sewer bills accrued from December 2020 to May 2021.[3] The following month, January 2023, the City obtained a judgment for the full amount in addition to attorney fees and costs.

About five months later, on June 6, 2023, the City sued Seaview in circuit court for $139,446.75 in unpaid bills issued from June 2021 to April 2023. The City later wrote off the June 2021 bill and, with the circuit court's permission, amended the complaint accordingly. The amended complaint asked for $98,480.68 in unpaid bills. In a plea in bar, Seaview responded that res judicata precluded the City's claim for amounts due before the January 2023 judgment. Seaview argued that the claims stemmed from a "running account" and therefore the City impermissibly split claims that qualified for joinder.

The circuit court denied the plea in bar. It based its ruling on the conclusion that "each separate . . . bill create[d] a separate cause of action."

At the ensuing trial, the City established that it invoiced Seaview monthly for its water and sewer usage. Each monthly invoice also reflected past-due amounts, interest accrued on those past-due amounts, and late fees. Each bill listed the total amount due, which was the sum

---

[2] We recite the evidence in the light most favorable to the City as the party prevailing at trial. *See Horn v. Webb*, 302 Va. 70, 77 (2023).

[3] The unpaid bills were issued in January 2021, March 2021, and May 2021.

of the balance forward (including any late fees) and current charges—less any payments. That total amount due was listed on the remittance slip at the bottom of the bill that was to be detached and returned with payment. Each bill listed the same account number for Seaview.

The City representative explained that the system was "invoice-driven" and the City considered each month a separate transaction. She disagreed with the characterization of a customer account as "one long running account" and testified that the outstanding balance was included on each bill merely for informational purposes. Of the twenty-two bills issued for the twenty-two months of service, Seaview made six payments. None of those payment amounts matched the monthly charge for any of the periods at issue here. As payments were made, the City typically applied them to "the oldest debt first." Although it "tried to work with [Seaview] on an installment plan," one did not come to fruition.

Seaview did not dispute the amount owed. Instead, it renewed its plea in bar, again raising its res judicata defense.

The circuit court reconsidered its ruling on the plea in bar in light of the testimony presented. Ultimately, though, it denied the renewed plea. The court found that each invoice arose from a different billing period and separate instance of utility usage. Therefore, it reasoned, each unpaid bill represented a separate transaction or conduct independent of Seaview's failure to pay the other bills. The court granted the City a judgment for $98,480.68 plus costs.

ANALYSIS

Seaview contends the circuit court erred by denying the plea in bar based on its ruling that each billing period represented a separate and independent transaction. It argues that the City engaged in impermissible claim-splitting and, as a result, that part of its claim was precluded by res judicata.

- 3 -

## I. Appellate Review of Pleas in Bar

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Harris v. Wash. & Lee Univ.*, 82 Va. App. 175, 204 (2024) (quoting *Cornell v. Benedict*, 301 Va. 342, 349 (2022)). "[A] plea in bar can be sustained even if it presents a bar to recovery to only some, but not all, of the plaintiff's claims." *Smith v. McLaughlin*, 289 Va. 241, 252 (2015).

"The party asserting a plea in bar bears the burden of proof on the issue presented." *Harris*, 82 Va. App. at 204 (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). When an appellate court reviews a ruling on a plea in bar on which the parties have presented evidence "ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Cornell*, 301 Va. at 349 (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). Yet "[s]imply holding an evidentiary hearing does not convert all of the arguments for and against the plea in bar into factual disputes." *Harris*, 82 Va. App. at 204 (quoting *Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022)). To the extent the review rests on legal questions, including the determination of whether res judicata applies, the appellate court reviews that aspect of the circuit court's ruling de novo. *See Lane v. Bayview Loan Servicing, LLC*, 297 Va. 645, 653 (2019).

## II. Res Judicata and Claim-Splitting

With this standard of review in mind, we turn to consider the inextricable link between the doctrine of res judicata and the rule against claim-splitting. *See Bill Greever Corp. v. Tazewell Nat'l Bank*, 256 Va. 250, 254 (1998). These doctrines evolved due to "public policy considerations" to "avoid[] a multiplicity of suits, protect[] against vexatious litigation, and avoid[] the costs and expenses associated with numerous suits on the same cause of action."

*Green v. Diagnostic Imaging Assocs., P.C.*, 299 Va. 1, 13-14 (2020) (quoting *Bill Greever Corp.*, 256 Va. at 254). Unpermitted "'[c]laim-splitting' is bringing successive suits on the same cause of action where each suit addresses only a part of the claim."[4] *Id.* at 13 (quoting *Bill Greever Corp.*, 256 Va. at 254). And "the rule against claim-splitting" is "enforce[d]" through application of "the doctrine of *res judicata*." *Bill Greever Corp.*, 256 Va. at 254.

That doctrine is set out by Rule 1:6, which provides as follows:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any . . . subsequent civil action against the same opposing party . . . on any claim or cause of action that arises from that same conduct, transaction or occurrence . . . .

Rule 1:6(a); *see also Lee v. Spoden*, 290 Va. 235, 247-48 (2015) (explaining that applying a res-judicata bar requires proof that (1) the claim was previously "decided on the merits by a final judgment," (2) both the past and current actions are between the same parties, and (3) the subsequent action "involve[d] the same conduct, transaction[,] or occurrence").

Res judicata applies "whether or not the legal theory or rights asserted in the . . . subsequent action were raised in the prior lawsuit." Rule 1:6(a). It also applies without regard to "the particular remedies sought" or "the legal elements or the evidence upon which any claims in the prior proceeding depended." *Id.* In other words, "it does not matter that the second suit . . . would require evidence not present in the first suit." *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 150 (2017).

## A. Issue and Claim Preclusion

"Res judicata involves both issue and claim preclusion." *Lane*, 297 Va. at 653 (quoting *Funny Guy*, 293 Va. at 142). Issue preclusion bars "the same parties from '[re]litigating in a

---

[4] Of course, parties can waive later application of the rule against claim splitting through the wording of the contract. *See Bill Greever Corp.*, 256 Va. at 254-56.

subsequent suit any issue of fact actually litigated and essential to a valid and final personal judgment in the first action.'" *Plofchan v. Plofchan*, 299 Va. 534, 543 (2021) (alteration in original) (quoting *Funny Guy*, 293 Va. at 142). Relatedly, "claim preclusion pre[vents] a party from continuing to litigate claims stemming from the same cause of action against the same party." *County of Henrico v. O'Neil*, 75 Va. App. 312, 322 (2022). It "treats unasserted claims as being subsumed into the disposition of related, previously adjudicated, claims arising out of the same cause of action." *Id.* (quoting *Brock v. Voith Siemens Hydro Power Generation*, 59 Va. App. 39, 45 (2011)). "Thus, the 'effect of a final decree is not only to [bind] the parties as to every question actually raised and decided, but as to *every claim which properly belonged to the subject of litigation* and which the parties, by the exercise of reasonable diligence, might have raised at the time.'" *Funny Guy*, 293 Va. at 147 (quoting *Smith v. Holland*, 124 Va. 663, 666 (1919) (emphasis added)).

A litigant who has "failed to avail himself of" the "opportunity to" "present [his] . . . grievance[s]" "must accept the consequences" of that failure. *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 59 (2018) (quoting *Brock*, 59 Va. App. at 46). Res judicata precludes claims only if they "accrue[d] prior to the litigation triggering the bar." *See Funny Guy*, 293 Va. at 159.

B. The Relationship Between Res Judicata and Joinder

The doctrine of res judicata is intertwined with the rules allowing joinder. Although a plaintiff is not required to join all possible claims, claims that *can* be joined *may* be joined. *See* Code § 8.01-272; Rule 1:4(k); Restatement (Second) of Judgments § 24 cmt. h (A.L.I. 1982). The principle that "[j]oinder is permissive" "means [merely] that a trial court cannot compel a claimant, at his opponent's insistence, to assert an additional claim if he chooses not to." *Funny Guy*, 293 Va. at 153.

But although joinder rules are permissive, res judicata imposes a "penalty for intentionally segmenting the litigation." *Id.* Put another way, a plaintiff with "a number of claims against a defendant" does not have to join them, but deciding not to do so "leaves the possibility that a plaintiff, actually having a single claim but mistakenly believing that he has a number of them, may commence a limited lawsuit and then run afoul of the rule against splitting." Restatement, *supra*, § 24 cmt. h. "Virginia law has historically recognized that a litigant must unite every joinable claim that he has against a particular defendant in one proceeding or risk the preclusion of his other claims." *Funny Guy*, 293 Va. at 146.

"Determining which claims *should* have been brought in earlier litigation largely depends on which claims *could* have been brought."[5] *Id.* at 143 (quoting Kent Sinclair, *Guide to Virginia Law & Equity Reform and Other Landmark Changes* § 11.2, at 247 (2006)). The threshold for considering whether claims are appropriate for joinder "parallels" the standard applied to questions of res judicata. *Id.* at 150 (first citing Rule 1:6; and then citing Code §§ 8.01-272, -281).[6]

---

[5] In other words, "if the underlying dispute produces different legal claims that can be joined in a single suit[,] . . . they should be joined unless a judicially[ ]recognized exception to res judicata exists." *D'Ambrosio v. Wolf*, 295 Va. 48, 54 (2018) (second alteration in original) (quoting *Funny Guy*, 293 Va. at 150). Certain carve-outs exist that do not apply here. *See, e.g.*, *Funny Guy*, 293 Va. at 150 n.15; Rule 1:6(c). "[I]n an appropriate case, res judicata, a doctrine based on public policy, may give way when in irreconcilable conflict with other, more important[,] public policies." *Bates v. Devers*, 214 Va. 667, 670 n.2 (1974); *see O'Neil*, 75 Va. App. at 323-24. In this case, however, the City made no public-policy argument.

[6] "[A] plaintiff may join multiple claims in the same proceeding . . . so long as they 'arise out of the same transaction or occurrence.'" *Funny Guy*, 293 Va. at 151 (quoting Code § 8.01-272); *see* Rule 1:4(k). The Supreme Court has recognized a slight wording difference between the rules for joinder, which use the phrase "same transaction or occurrence," and the rule for res judicata, which uses the phrase "same conduct, transaction or occurrence." *Funny Guy*, 293 Va. at 152. The Court has interpreted the "nearly identical phrase[s]" as "'apply[ing] the *same test*.'" *Id.* (quoting Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 14.11[B][5], at 1220 (6th ed. 2014) (emphasis added)).

C. Same Conduct, Transaction, or Occurrence

The Supreme Court, in deciding *Funny Guy*, 293 Va. at 154-55, provided a framework for determining whether claims arise from the same conduct, transaction, or occurrence for purposes of a res judicata analysis. The analysis takes a practical approach and focuses on "uncovering the true underlying dispute between the parties." *Id.* at 155. The test considers six factors, none of which, by itself, is dispositive. *Id.* at 154. Summarizing those six factors, "[t]he proper approach asks 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting Restatement, *supra*, § 24(2)).

A "party asserting res judicata as a defense" bears the burden of proof by a preponderance of the evidence. *D'Ambrosio v. Wolf*, 295 Va. 48, 53 (2018). Here, the circuit court determined that res judicata did not apply because each invoice represented a separate transaction. We now examine each of the six factors provided in *Funny Guy*.

### 1. Time

Claims can arise out of the same transaction or occurrence when the charged conduct spans months. *See Fox v. Deese*, 234 Va. 412, 416-18, 422-23 (1987). The circuit court found that "[t]he time . . . factor for each water bill [wa]s different as the amount sought under each bill [wa]s for a different billing period." While this part is true, we note that although the charges were billed monthly, they were continuous. *See* Newport News, Va., Code § 42-42(a), https://perma.cc/YSQ4-SJGD (providing monthly billing for water usage); *see also* Newport News, Va., Code § 33-33, https://perma.cc/GF86-VLRB (calculating sewer usage charges based on water consumption). The service, too, was continuous and uninterrupted.

### 2. Space

Virginia law does not define this factor, but in *Funny Guy*, the Supreme Court implied it relates to the amount owed or the work provided. *Funny Guy*, 293 Va. at 155 ("Evaluating the 'time' and 'space' factors reveals a single payment dispute—concerning the same money for the same work—that was ongoing and uninterrupted." (citation omitted)). In this case, the circuit court found that "[t]he . . . space factor for each water bill [wa]s different as the amount sought under each bill [wa]s for a different billing period."

### 3. Origin

Again, Virginia law does not define this factor. But the Supreme Court, in *Funny Guy*, implied it is linked to motivation. *Id.* at 155. The circuit court concluded that "[t]he origin for each water bill sought . . . [wa]s different because each bill originate[d] from a different billing period and for a different amount of water that was provided."

### 4. Motivation

The circuit court found that the City's "motivation for recovery for each unpaid water bill due in this suit [wa]s the same." The City "want[ed] to get paid for the water [and sewer services] that it provided."

### 5. Convenient Trial Unit

Something forms a convenient trial unit if it "fit[s] within a single factual narrative." *Id.* *See generally Fox*, 234 Va. at 418-20, 423 (holding joinder was appropriate even though multiple claims were brought against various defendants for actions that occurred in different locations because the alleged misconduct, all of which related to the production and promotion of a single concert, arose from a single transaction or occurrence). Relevant to this factor, the circuit court noted only that, "[w]hile each transaction may form a convenient trial unit, no single factor [wa]s dispositive [i]n the [c]ourt's analysis."

- 9 -

6. Parties' Expectations or Business Understanding or Usage

Importantly, this last factor asks whether the claims "aris[e] out of 'a natural grouping or common nucleus of operative facts.'" *See Funny Guy*, 293 Va. at 156 (quoting Restatement, *supra*, § 24 cmt. b). The circuit court concluded that "[t]he parties' business understanding and usage . . . support[ed] a finding that each unpaid water bill [wa]s its own transaction that create[d] its own payment dispute because each bill create[d] its own payment . . . due for each different billing period."

D. Application of These Principles in this Case

We consider the circuit court's analysis with the applicable standard of review in mind—deferring to factual findings unless "plainly wrong or without evidentiary support," *Cornell*, 301 Va. at 349 (quoting *Massenburg*, 298 Va. at 216), and reviewing legal conclusions de novo, *see Lane*, 297 Va. at 653. The six factors provided in *Funny Guy* guide our analysis, but no single factor, by itself, is dispositive. *Funny Guy* teaches that at the heart of this analysis is the fundamental goal of "uncovering the true underlying dispute between the parties." *Funny Guy*, 293 Va. at 155.

The circuit court's findings on the time, space, origin, and motivation factors are not plainly wrong or unsupported by the record. As for the fifth factor, convenient trial unit, we observe that the unpaid bills easily "fit within a single factual narrative" and, therefore, form a convenient trial unit. *See id.* This conclusion is irrefutably demonstrated by the fact that the City filed a complaint grouping the unpaid bills together in a single claim.[7]

---

[7] The amended complaint provides that the City "continuously furnished water and sewer services" to Seaview "from May of 2021 through April of 2023" and that Seaview "is responsible for payment of monthly utility bill[s] totaling $98,480.68." It did not set forth a separate claim for each month of unpaid services.

- 10 -

Turning to the last factor—expectations, business understanding, or usage—the evidence supports the circuit court's finding. It concluded that the parties approached each unpaid invoice as representing a separate transaction, even though certain aspects of the evidence weigh against the City on this point. Importantly, however, this factor asks whether the claims "aris[e] out of 'a natural grouping or common nucleus of operative facts,'" an aspect that the circuit court did not address. *See id.* at 156 (quoting Restatement, *supra*, § 24 cmt. b). The accrued debts did, in fact, "aris[e] out of 'a natural grouping or common nucleus of operative facts.'" *See id.* (quoting Restatement, *supra*, § 24 cmt. b). This is so because "[r]easonable commercial parties would not expect, much less want, a mere payment dispute to disintegrate into multiple lawsuits." *Id.* at 155.

The core dispute here was over Seaview's failure to consistently pay the City for utilities from December 2020 to April 2023. On these facts, *Funny Guy* compels the conclusion that Seaview established, as a matter of law, that the rules of joinder would have allowed the City to join its claims against Seaview.[8]

This reasoning brings us to the parallel conclusion that the claims do not reflect separate conduct, transactions, or occurrences for res judicata purposes. The City's invoicing methodology did not splinter its continuous provision of utility services to Seaview into discrete monthly instances of conduct, occurrences, or transactions. Therefore, res judicata applies to

---

[8] Although the combined claims would have exceeded the monetary threshold for jurisdiction in general district court, the City could have brought them as one suit in circuit court. *See* Code §§ 16.1-77 (defining the civil jurisdiction of general district courts), 17.1-513 (defining the jurisdiction of circuit courts).

preclude the City from bringing separate claims that were ripe when it brought the initial suit.[9]

*See generally Jones v. Morris Plan Bank*, 168 Va. 284, 292 (1937) (holding that a suit on a

single default on an installment contract will bar separate actions on other defaulted installments

due when the suit is brought).  The warrant in debt was filed in general district court on

December 8, 2022.  The City was precluded from suing for the portion of the debt due before

that date—the last one being the November 4, 2022 bill due on November 28, 2022.  The City

was not precluded from bringing a claim on the amount shown in the remaining five bills dated

from December 8, 2022, forward.  The claims could have been brought together and, under these

facts, res judicata precludes a portion of the City's second suit.

CONCLUSION

For these reasons, we hold that the current action stems in part from the same conduct,

transaction, or occurrence that formed the basis of the previous district court suit between the

parties.  Res judicata therefore applies to preclude the City from bringing a subsequent action on

the portion of the debt that it could have included in its first action.  As a result, the circuit court

erred by denying the plea in bar as to that portion of the claim.  We reverse the judgment in part

and remand the case to the circuit court for further proceedings consistent with this opinion.

*Reversed in part and remanded.*

---

[9] In light of this holding, we do not reach Seaview's alternative arguments that judicial estoppel and the approbate-and-reprobate doctrine should apply to prevent the City from claiming that each month represented an independent transaction because it merged different billing periods in a single action.  *See generally Rebh v. Cnty. Bd.*, 303 Va. 379, 382 (2024) (per curiam) ("Our doctrine of judicial restraint requires appellate courts to decide cases 'on the best and narrowest ground available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).